## Kentucky & Tennessee Railway Company v. Minton.

(Decided December 17, 1915.)

### Appeal from McCreary Circuit Court.

1. Master and Servant—Methods of Work, Rules and Orders—Employers' Liability Act.—A carrier has the right to prescribe reasonable rules looking to the safety of the operation of its business, and the protection of its employees and the public in general; and it is the duty of the employee who has knowledge of such rules to obey them unless their observance has been dispensed with by some custom or usage, of which custom or usage the carrier had notice and thereby abrogated a strict observance of such rules; and if the person, in the absence of any such excusing circumstances, fails to observe a reasonable rule for his own protection, and by reason thereof is injured, such failure is the proximate and sole cause of his injury for which he cannot recover; and this is so, although the action may be brought under the Federal Employers' Liability Act, or the Federal Safety Appliance Act.

2. Master and Servant—Methods of Work, Rules and Orders.—In this case the plaintiff was employed as a car inspector whose duties required him on this occasion to go under a car being repaired, and while so engaged under the car, it was made to move by the shunting of some cars against it. The rule required that when engaged as he was at that time, it was his duty to put out and display a blue flag, which he had failed to do; and it is shown that if he had done that, no cars would have been shunted against the one under which he was working; and it was shown that he was familiar with the rule and was in possession of the flags, and the only excuse for the failure to display the flags as required by the rule was that he had not expected to be under the car but "a few minutes." Held, that it was his duty to display the flags before the operatives of the shunting cars were called upon to exercise any care for his safety and before they owed him any duty to be observed; and that such failure on the part of the plaintiff was the sole cause of his injury and he cannot recover.

3. Master and Servant—Negligence—Failure to Observe Rule.—While contributory negligence of the plaintiff is not under either of the

Federal Statutes mentioned a complete bar to the action, yet in order for the plaintiff to recover, he must show some negligence on behalf of defendant as a producing cause of his injury, and when the evidence shows, as in this action, that his negligence in failing to observe the rule stated absolved the defendant from the duty of exercising care towards him, unless it knew, or by the exercise of ordinary care, could have known of his peril, and under the circumstances, his negligence was the sole producing cause of his injury and he cannot recover.

4. Master and Servant—Employers' Liability Act.—Both the Federal Employers' Liability Act and the Federal Safety Appliance Act give the action therein mentioned to their employees, and if the plaintiff is shown not to have been in the employ of the defendant he cannot maintain his action under the statute.

J. N. SHARP for appellant.

VIRGIL SMITH, ROBERT HARDING, JOHN W. RAWLINGS and J. P. HOBSON & SON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This appeal is from a judgment of the McCreary circuit court awarding to the appellee, John C. Minton, against the appellant, Kentucky & Tennessee Railway Company, the sum of $8,000.00. In hereinafter referring to the parties we shall do so by the terms "plaintiff" and "defendant." The cause of complaint, as made by the plaintiff in his petition against the defendant, appellant, and the Cincinnati, New Orleans & Texas Pacific Railway Company, which latter company is not a party to this appeal, is, that through their negligence, the plaintiff, who was an employe of both, as alleged did, on August 15, 1912, while engaged in his duties as a car inspector, sustain injuries resulting in the loss of one of his legs and otherwise slightly injuring his body. The suit is brought under both the Federal Employers' Liability Act, and what is known as the Federal Safety Appliance Act, as amended by the Act of Congress of 1908. It appears that the defendant, K. & T. Ry. Co., is an independent corporation of its co-defendant, C. N. O. & T. P. Ry. Co., and that it operated a short line of railroad located entirely in Kentucky, and being some fifteen miles in length, one terminus of which is Stearns, in Kentucky, and the other at Difficulty, in Kentucky. Its co-defendant, C. N. O. & T. P. Ry. Co., owns a line of railroad running through the State of Kentucky and into

other states of the union, and it has a yard at Stearns composed of its main line and numerous side tracks. The facts,. beyond dispute, disclose that appellant would, with its own engines, procure empty cars which might be placed on some of these side tracks and carry them to some point, or points, along its line for the purpose of being loaded with either coal or lumber, and would return. same upon the yards at Stearns located upon some of the same side tracks. It did not own any of such cars, but they were owned or furnished to it entirely by its co-defendant. Some time late in the afternoon preceding the day of the accident, or early the next morning, four empty cars had been placed near the southern terminus of one of these side tracks and upon it, and some three or four loaded cars had been placed upon the same track near the northern terminus thereof. The plaintiff had for some time previous been in the employ of the defendant, C. N. O. & T. P. Ry. Co., upon its yards at Stearns as a car repairer. His duties consisted in examining both empty and loaded cars which might be placed upon these side tracks, and if any defects should be discovered to repair same. On the day he was injured, about nine o'clock A. M., he discovered some defects in one of the couplings on one of the empty cars before mentioned, and to repair it, necessitated his going under the car; which he did, and while under there, the loaded cars; which had been placed at the north end of the same side track, as stated, moved down and collided with the empty cars, causing them to move and in such manner as to produce the loss of his leg. It appears that the loaded cars were made to move by the defendant, K. & T. Ry. Co., attempting to place upon the north end of same side track, some additional loaded cars, and in doing so they ran against the ones already there, causing them to move and to collide with the empty cars, as stated. To give the plaintiff any standing as against the appealing defendant under the Federal Employers' Liability Act, he was compelled to and did allege that it, at the time, as well as the plaintiff, were each engaged in interstate commerce, and the same allegations were made with reference to the other defendant. It was also charged that the stationary loaded cars, which were forced to move, as indicated, were not equipped with facilities for making automatic couplings, or with brakes, as is required by the Safety Appliance Act, and amend-

ments thereto and that because of this, the cars being placed in the side track at its northern end, failed to couple therewith, and as a consequence the loaded cars were permitted to roll down, and collide with, the empty cars mentioned, and under which plaintiff was working. It is alleged that if the couplings and brakes had been in the condition required by the statute, *supra,* this consequence would not have happened.

These grounds for recovery were all denied by the answer, and in the second paragraph, a plea of contributory negligence was made, and in the third paragraph it is alleged that the plaintiff went under the car upon which he was at work without displaying any signals to indicate that he was under the car, which action on his part was in violation of an express rule of the company, with which rule he was perfectly familiar at the time, himself being in possession of a copy thereof, and that this failure on his part was not only the proximate, but the sole cause of the accident, and by reason thereof the plaintiff was not entitled to recover. These defensive matters were appropriately denied and the trial resulted as hereinbefore stated.

It might at once be conceded that contributory negligence, only on the part of the plaintiff, constitutes no defense to an action brought under either of the Federal statutes, *supra.* It goes only in mitigation of damages to an action brought under the Federal Employers' Liability Act, and is of no force whatever in an action brought under the Safety Appliance Act, as amended. Not only do the two statutes so provide, but it has thus been determined by numerous opinions, not only from federal courts, including the United States Supreme Court, but also by this court. It is essential, before the plaintiff can recover in actions brought under either of the statutes mentioned, that he must allege and prove some negligence towards him by the defendant, and where there is a total failure to show any such negligence, he must fail in his action.

It was proven beyond question, not only that the plaintiff, at the time, was working under the character of rules hereinbefore stated, and with full knowledge of them, but also that he utterly failed to display any flags anywhere upon that occasion. Not only was plaintiff familiar with the rules, while he had been working as an inspector of cars, but the evidence shows that previ-

ous to that time, for a period of about fifteen months,
he had worked in the capacity of a conductor for one
of the defendants, and had taken an examination wherein
he was required to, and did, show a thorough knowledge
of such rules.   He testified upon this subject as fol-
lows:

"Q. For what railroad company did you work?   A.
C. N. O. & T. P. Railway Company.   Q.   While working
for the C. N. O. & T. P. Railway Company as conductor,
did you have to pass an examination as to the rules of
the company?   A. Yes sir.   Q. Are you and were you
familiar with rule number 26, in reference to the use of
blue flags?   A. I can not call to mind the number of the
rule, but I suppose I were.   Q. Were you at the time of
this accident?   A. Yes, sir.   Q. Will you state whether or
not this is a book of rules for the Q. & C. Railway Com-
pany?   A. Yes, sir, it is.   Q. Look at rule No. 26 and read
it to the jury.   Will you read that rule to the jury?   A.
'A blue flag by day and a blue light by night displayed
at one or both ends of an engine, car or train, indicates
that workmen are under or about it.   When thus pro-
tected, the engine, car or train, must not be moved or
coupled with any other train, car or engine.   Workmen
will display the blue signals, and the same workmen are
alone authorized to remove them.   Other cars must not
be placed on the same track so as to intercept the view of
the blue signals without first notifying the workmen.'
Q. Did you have a blue flag?   A. Yes, sir.   Q. How many
did you have?   A. I had two, I believe.   Q. Will you turn
to the back of that book and see if the picture indicates
how the flag is to be put up?   Will you show that to the
jury?   A. (Indicating).   This is day and this is night
signal.   Q. Did you have one of those flags on the end
or in the center of the cars at the center or next to the
end operated by Mr. Foster, for the Kentucky & Tennes-
see Railroad Company?   A. I did not in my opinion.   Q.
Did you have any on the load of cars, the four cars loaded
that you spoke of on that track?   A. No, sir, I did not.
Q. Then, if the Kentucky & Tennessee engine came onto
that track, they had no notice on your part by reason of
the flag being not on the end of the car?   A. No, sir, I
put no flag there."   After the accident, one Charles Rob-
erts succeeded the plaintiff as car inspector at Stearns,
and in order to obtain the keys to the office, or "shack"
of the inspector, Roberts went to him about seven o'clock

in the afternoon following the accident, and there had a conversation with him, a part of which was concerning the display of the flag. The witness testified upon this subject as follows: "Q. Did you have a conversation with him at that time about the blue flag? A. Well, I asked him—I talked with him, and I asked him, I says, 'John, did you have up your flag?' and he says: 'No, I did not;' I said: 'You should have had them up;' he says: 'I know I should, but I was figuring on being there two or three minutes and I would be through and be out.' Q. When you went to Stearns to take the work, tell the jury whether or not you found blue flags? A. I found two blue flags down there in a little tool house that they have there for the purpose of keeping tools and things in and record books, etc."

The engineer who was in charge of the engine which was engaged in setting upon the track the additional loaded cars, testifies that he was familiar with the rule in question, and that he observed, at the time, to see if there were any such flags displayed, and failing to see any, he pushed his cars into and upon the side track. He furthermore states, that if there had been any such flags displayed, he would not have gone into the side track, because he would have known the danger attending it. Neither the testimony of the witness, Roberts, nor that of the engineer, was denied or contradicted. Under these circumstances we are confronted with the proposition whether or not the failure of the plaintiff to obey the rule mentioned, resulting in the cars producing the collision to be set in motion, can recover herein, notwithstanding these cars may have been negligently put upon the side track, and they might not have been properly equipped with couplings or brakes, as is required by the Federal Safety Appliance Act.

It has long been the law in this State that where the rule was reasonable, and it is shown not to have been set aside or nullified by any custom, usage, or course of conduct, the failure to observe it would constitute negligence, and if the party at fault and injured thereby was the plaintiff, such contributory negligence on his part would make his negligence the sole and proximate cause of the injury, unless his perilous position was discovered in time to have prevented the accident by the exercise of ordinary care, notwithstanding his failure to obey the rule. Alexander v. L. & N. Ry. Co., 83 Ky., 589; L. & N.

Ry. Co. v. Scanlon, 22 Ky. Law Rep., 1400; M. N. O. & T. P. Ry. Co. v. Lovell, 141 Ky., 249; L. & N. Ry. Co. v. Morgan, 148 Ky., 418; Lumkin v. L. & N., 144 Ky., 621; Thompson on Negligence, section 5395; Sherman & Redfield on Negligence, section 207; Nolan v. N. Y. & C. Ry. Co., 43 L. R. A., 305.

The term "negligence" is a relative term, and when applied to a plaintiff, is most generally called "contributory negligence." It implies the failure to observe a duty, which the party charged with the negligence, owed to the injured party. There can be no negligence without a pre-existing duty to be observed, and the observance has been refused. In many instances the duty to be observed, the non-observance of which constitutes negligence, is imposed by the law for the protection of the general public against accidents resulting from recklessness on the part of others. To this class belong all injuries to the people generally which occur on public highways across railroad tracks, and injuries to persons in thickly settled communities when using the property of the party committing the negligence under such circumstances as to imply a license to use it, and in many other cases which can be readily imagined. In other instances this duty to be observed, must be created, so to speak, by affirmative action of the party, who would complain of a failure to observe it. This character of created duty most generally, if not entirely, arises out of contractual relations between the parties such as master and servant. Manifestly, there could be no negligence in failing to observe a duty, which the complaining party should have created, but which he negligently failed to create. In the instant case, with full knowledge of the required observance of the rule made for his benefit, the plaintiff failed to display the flags so as to give notice and warning of his situation; and it is insisted that the acts of the defendants, as hereinbefore stated, violated a duty which they owed to him, which duty under the facts proven, did not have any existence, because the plaintiff had failed to give it existence. His injury in this regard was, under the facts of this case, something more than mere contributory negligence. In these views we are abundantly fortified by text writers and courts of last resort. In Sherman & Redfield on Negligence, sixth edition, section 1-a, it is said:

"Negligence in law in its widest aspect, having relation to the non-fulfillment of duties involves the presentation of the entire body of substantive law, excepting only wrongs unintentionally inflicted  *  *  *  but the term 'negligence' as used in this work and as uniformly used by courts and text writers, where actionable negligence is intended, is meant the action of tort for injury unintentionally inflicted on another, in his person or estate, by the failure to perform a *legal duty* owing him."

Further on, and in section 8, the learned author says:

"The first element of our definition is a duty. If there is no duty, there can be no negligence."

And, again in section 15, same work, it is said:

"As a matter of course, there can be no negligence where there is no breach of duty. It must appear, therefore, not only that the defendant owed a duty, but also that he did not perform it."

And, in section 25, same work, it is said:

"No action can be maintained upon an act of negligence, unless the breach of duty has been the cause of the damage. The fact that the defendant has been guilty of negligence, followed by an accident, does not make him liable for the resulting injury, unless that was occasioned by the negligence. The connection of cause and effect must be estimated. 'And the defendant's *breach of duty,* not merely his *act,* must be the cause of the plaintiff's damage."

The italicised portion of the last quotation is found in the text. The law in this State is not different upon the subject from that laid down by the author quoted from, and, indeed, we could multiply citations to the same effect, but deem it unnecessary.

We conclude then, that under the facts and circumstances exhibited by this record, it was the duty of plaintiff to have observed the rule, unless same had been abrogated by some custom or usage, or mode of conduct or other excusing circumstances in which all parties participated, and his failure to do so, constituted negligence on his part, which was the sole producing cause, in law, of his injury.

The burden was on plaintiff to allege and prove two facts before he could recover; the existence of the duty, and the failure to observe it, after it was known, or

could have been known by the exercise of ordinary care. This he failed to do.

This being true, he should not be permitted to recover against the defendant, appellant herein, under the facts of this case, although it might be shown that the case, so far as said defendant is concerned, was one properly brought under the Federal Liability Act.

But we do not find from the record that the plaintiff was an employe of the defendant, K. & T. Ry. Co. All of the testimony is to the effect that he was an employe of the appellants' co-defendant. He was paid by it, and it owned the yards upon which he was at work, and either owned, or was responsible for the cars which he repaired, and plaintiff was under no control of the defendant, K. & T. Ry. Co.

There is no evidence of any joint traffic arrangement existing between the two defendants, although charged in the petition, and under the testimony, the defendant, K. & T. Ry. Co., was a mere feeder of freight to its co-defendant, C. N. O. & T. P. Ry. Co. By the express terms of the Employers' Liability Act, the carrier is liable to its employes only for negligence resulting in their injury. The courts have no power to extend its liability under the statute to one not its servant, he being a stranger to it. This does not mean that such one could not, under a proper showing, recover for his injuries, either at common law, or in any other manner, which might be provided by a statute of the jurisdiction of the forum. It was certainly the intention of Congress in enacting the statute, *supra,* to limit the beneficiaries thereunder, to those only sustaining the relation of servant to the master.

We fail to find any competent evidence showing the non-equipment of the car, as required by the Federal Safety Appliance Act. There is in the record a certain statement purporting to outline what one Albert Patrick, who was the conductor in charge of the engine of defendant, K. & T. Ry. Co., would say as to the equipment of the cars in the respects mentioned, but this statement is not even incorporated into any affidavit for continuance, whereby it would be permitted to be read as the deposition of the absent witness. In fact, there is no motion made by any one to continue the case, nor is there anything to show an agreement that such a statement might be read, or any reason why the witness,

Patrick, was absent; and, the record shows that the statement was introduced over the objections and exceptions of the defendant railroad company. Under such circumstances it was clearly erroneous to have permitted this statement to be read to the jury, and with it out, there is no testimony in the record, upon the question being considered, except the statement made by the brakeman some fifteen minutes after the accident, explaining where he had obtained a coupling-pin, which he then had in his possession, and which he said was one having some connection with the coupling on some of the cars. This testimony was not only vague, but we think it violated the *res gestae* rule, and was, therefore, incompetent.

Under any view of the case, we are constrained to conclude that the motion to instruct the jury to find for this complaining defendant should have been sustained. There are other questions in the case, but our conclusions herein have dispensed with the necessity for their consideration.

The judgment is reversed, with directions to the lower court to proceed in accordance with this opinion.