## The Frankfort Elevator Coal Company v. Williamson.

(Decided May 27, 1921.)

### Appeal from Franklin Circuit Court.

1. Negligence—Care as to Licensees or Persons Invited.—A tunnel or hole in a large coal pile in a coal yard is not so obviously dangerous as to prevent recovery by one who is injured while working about its mouth, where the physical facts are that the hole had been there for some time, the coal pile was hard frozen, and

the injured man knew nothing of the supports that might have been in it, and it appeared that coal had recently been taken from it, and one of the employes of the coal company had invited the injured person to go to that place and get the coal which he desired.

2. Negligence—Submission to Jury.—When the evidence on the issue of obvious danger is such that reasonable men might differ as to the fair inferences and conclusions which might be drawn therefrom, it should be submitted to the jury.

3. Appeal and Error—Instructions.—A party may not complain of the failure of the trial court to give an instruction on a subject when he offered none on that subject, and particularly when the motion and grounds for a new trial did not cover such alleged error.

4. Appeal and Error—Evidence—Verdict.—Evidence examined, and verdict held not to be palpably against the weight thereof.

LESLIE W. MORRIS, E. C. O'REAR and J. C. JONES for appellant.

B. G. WILLIAMS, J. T. GOOCH and W. C. MARSHALL for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

During the severe winter of 1917-18 the appellant operated two coal yards in Frankfort, Ky., one in North Frankfort and the other in South Frankfort.

On the 21st of January, 1918, the appellee went to appellant's North Frankfort yard, and while there by invitation as one of its customers, and while loading his small sled in connection with one of appellant's employes, was severely injured by the collapse or spreading of a large pile of coal in appellant's said yard and for the injuries so received, as claimed, by reason of the negligence of appellant, and its officers and employes, this action was brought.

The petition alleges, in substance, that the defendant operated the coal yard in question, and that he, together with the public, was invited to go and be there as the customer of the defendant, for the purpose of buying and receiving coal from it, and that on or about the 21st of January, 1918, while he was so upon the premises of the defendant for the purpose of buying and receiving coal, and while upon the ground at or near one of its large banks or piles of coal, from which defendant's agents and employes were then and there, and had been immediately

previous thereto, taking coal, and while plaintiff, together with an employe of the defendant, was loading and placing coal upon his (plaintiff's) sled, said bank or pile of coal, consisting of heavy blocks and smaller ones, by reason of the negligence and carelessness of the defendant and its officers and agents, fell, and with great force and weight precipitated against and upon the plaintiff said coal, whereby he was violently knocked down by said mass and pile of coal, as a result of which he was seriously, painfully and permanently injured.

The answer was a traverse of the plaintiff's petition, and in the second paragraph it was pleaded, in substance, that upon the occasion in question the plaintiff had been directed by the agents and servants of the defendant in charge of the coal yard to have the coal loaded upon his sled from certain cars which were loaded with coal and at the time in the yard, but that the plaintiff, in violation of these instructions, and of his own accord, and without authority from the defendant, undertook to load his sled from the pile of coal in the yard, and in so doing he got under the edge of the pile of coal and pulled the blocks of coal from under the same until, with his own hands, the pile was so loosened that it fell, although he had been previously warned in time to have prevented his injury to get out from under the pile of coal, but that he failed to heed the warning and voluntarily, and without defendant's consent, engaged in loading the coal himself, although the defendant had at the time ample hands to load the same, and that the plaintiff had failed upon the occasion in question to exercise ordinary care for his own safety in getting in and about the pile of coal and taking coal therefrom to load on his sled and that his injuries, if any, were due to his own negligence.

The affirmative matter of the answer was traversed on the record.

On a trial the jury returned a verdict for the plaintiff for twelve hundred dollars, upon which judgment was entered, and the defendant's motion and grounds for a new trial having been overruled, it has appealed.

A reversal is asked upon three grounds:

(a) Because the court failed to give the peremptory instruction asked for the defendant.

(b) Because the court erred in giving instruction number one at plaintiff's instance.

(c)   Because the verdict of the jury was palpably against the evidence and because of the failure of the court to grant a new trial for that reason.

The plaintiff's evidence showed that he went to the coal yard on the day named and took a one-horse sled with him for the purpose of getting $2.00 worth of coal; that he went to the office and got the sled weighed, and the lady there in charge told him to go out in the yard and get the coal; that he had gotten coal there a number of times before in quantities of from $1.00 to $2.00 worth at a time; that after he weighed his sled he went out in the yard and met one of appellant's employes, who asked him how much coal he wanted, and when he told him $2.00 worth, he said, "All right; right here is a good place to get under; somebody has already knocked down about what you want; good, dry coal, already laying down here;" that there were picks and shovels about there and he and the employe proceeded to load the sled; that in the big pile of coal there was a hole or tunnel from which people had been taking coal; that the hole was higher than his head and went back under the pile 25 or 30 feet or more, but that the coal which he and the employe load-ed on the sled was already knocked down and was dry coal, lying on the ground as if somebody had recently left it there, and that it was all disconnected from the main big pile of coal; that at about the time he thought he had his $2.00 worth loaded on the sled he saw a large lump down on the ground separate from the big pile, and he thought that lump together with what he had would complete his load and that he took a fork and was prizing or lifting that lump, with his back to the main coal pile, when the whole thing collapsed and spread over him; that the weather had been for some time very cold and was still very cold, and the coal pile was covered with snow and ice and apparently frozen hard.

Some of the material points in appellee's evidence are corroborated.   For instance, it is shown by several witnesses that the hole or tunnel was there and had been there for some time and that they themselves had gotten coal at or out of the tunnel, and that it was customary for purchasers of small quantities of coal to go to the coal piles in the yard and load their own sacks or small vehicles, and that such small customers usually sought, as appellee did, to get dry coal, free from snow or ice, which could best be procured at or in the tunnel.

Again, appellee's testimony was corroborated by a disinterested witness upon the material question whether or not he had prized the last large lump of coal from out of the base of the big pile and thereby by his own act loosened it so as to cause the collapse or spread.

Much of the evidence of the defendant was to the effect that appellee had been directed specifically to load his sled from the cars that were on the tracks in the yard, and that in violation of those instructions he had gone to the large pile of coal. The defendant likewise introduced considerable evidence tending to show that the last large lump of coal which the plaintiff sought to place upon his sled was in the edge of the large pile of coal, and a part of the foundation of the pile, and that when he loosened it by his own efforts, it caused the whole pile to collapse, and thereby his injury was brought about.

It is first said that the peremptory instruction should have been given because, as claimed, appellee admitted in his cross-examination that Barrett and Wiley, two of the officers of appellant, had warned him of the danger of going at or near the mouth of the tunnel, and told him it was dangerous.

It is true that the plaintiff stated on cross-examination that Barrett and Wiley said the place was dangerous, and that Barrett was the manager and Wiley the yard boss; but an examination of the plaintiff's whole testimony, and an examination of the evidence of both Barrett and Wiley, who testified for appellant, discloses that the conversation with Barrett and Wiley to which he referred in that evidence was one after the injury. This is apparent from the fact that the plaintiff in another part of his evidence specifically and positively states that he had not been warned before the accident of any danger about getting coal from or near the mouth of the tunnel, and from the further fact that neither Barret nor Wiley claims to have given him any such warning before the accident, and from the additional fact that it appeared that both Barrett and Wiley visited him more than once after the accident, either at the hospital or at his home.

We are convinced that no fair interpretation of the evidence can make this statement of appellee mean that he was warned by Barrett and Wiley, or either of them, before the accident happened.

But it is said that the facts of this case bring it within the rule that where a danger is so obvious and imminent that one of ordinary prudence under like circumstances would not have subjected himself to it there can be no recovery, and that therefore the peremptory should have been given.

We confess that this is the only question in the case which has given us any difficulty, for at first blush it would seem that any ordinarily prudent man would hesitate to go in or near to the mouth of a hole or tunnel in a great pile of loose coal. But when we consider that the hole had been there for some time, that the pile of coal was frozen hard, and that those going there occasionally to get coal did not know whether there were any supports in the tunnel or not, and did not know what, if any, steps had been taken to make it safe, and yet could see from the physical facts that coal had been recently taken out of or down from near the mouth of the tunnel, and when we consider that one of the employes of appellant at work in its yard invited appellee to go to that special place to get his coal and there worked with him in loading his sled, the employe presumably having better opportunity for knowledge of its danger than appellee, we have reached the conclusion that the conditions and circumstances were not such as to make it an obvious and imminent danger which would preclude this appellee from a recovery.

Not only so, but it is testified in this record by Wiley, the yard boss of appellant, that on the Saturday afternoon before this accident, which happened on Monday, he had caused this large pile of coal to be cut down or trimmed down, and that the way he left it on Saturday afternoon it was not dangerous.

It is comparatively easy after an accident to look back and reason out from the conditions and circumstances with which one was acquainted and say that any reasonable person might have known that it was dangerous; but it is quite another thing, in the ordinary activities of life, for persons in their daily conduct to see and appreciate in advance the danger which subsequently appears to have been so plain.

At any rate, in this case the question of obvious danger was submitted by the court to the jury, and in the light of all the facts there was no such condition as authorized peremptory action by the court on this question.

When the evidence is such that reasonable men might differ as to the fair inferences and conclusions which should be drawn from it, it should be submitted to the jury.

In its motion and grounds for a new trial the plaintiff only complained of error of the court in giving instruction number one asked by the plaintiff, and in its brief it is conceded that the instruction as given is almost identical with the one approved by this court in the case of Ferguson & Palmer Co. v. Ferguson's Admr., 114 S. W. 297; but it is complained that the court did not give in this case another instruction which was ordered to be given in that case, to the effect that the defendant was under no obligation to keep its premises safe at places where customers were not invited to be, and that if the plaintiff at the time he was injured was at a place not provided for the use of customers such as he, they should find for the defendant.

It is sufficient answer to this question to say that no such instruction was offered for appellant, and besides the instructions given embraced the same idea.

The claim that the verdict is palpably against the weight of the evidence, cannot be sustained. It is true that upon two of the vital issues in the case the weight of the evidence appears to be against the plaintiff. There are several witnesses who testify that the plaintiff was directed by the young lady in the office to load his sled from the cars and was not directed to go out in the yard, and there were several witnesses who testified that the large block of coal which the plaintiff purposed to load on his sled, and which he was attempting to load when the accident happened, was prized loose by him from the base or foundation of the coal pile at or near the mouth of the tunnel, and that that caused the collapse and consequently his injury.

It may be admitted that upon these two important questions the weight of the evidence appears to have been against the plaintiff, and it may be admitted that this court would as an original proposition in considering the evidence have made a different finding of fact; but these things furnish us no cause for setting aside the verdict. The jury were the triers of the facts, and we are not authorized to disturb their verdict unless it is clearly and palpably against the weight of the evidence, which it is not in this case. Lou. & Interurban R. R. Co. v. Roemmele, 157 Ky. 84.

Judgment affirmed.