## Chesapeake & Ohio Railway Company v. Rogers, By, et al.

(Decided January 31, 1922.)

### Appeal from Kenton Circuit Court (Law and Equity Division).

1. Negligence—Presumptions and Evidence.—Negligence will not be presumed from the mere occurrence of an accident resulting in injury, but must be established by evidence of the fact, or by

circumstances evidentially shown from which the fact reasonably may be inferred.

2. Negligence—Actions for Personal Injuries.—In an action to re-cover damages for a bodily injury, alleged to have been caused by the negligence of the defendant, there must be some evidence to show such negligence and that it was the proximate cause of the injury. Recovery cannot be had on mere surmise or speculation as to how or why the accident occurred. Between the negligence and injury there must be a direct connection; and while this may be shown by indirect evidence, it cannot be established by building inference upon inference.

3. Negligence—Evidence—Submission to Jury.—When the question is one of negligence or no negligence, it is well settled law that where the evidence is equally consistent with either view, the existence or non-existence of negligence, the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it.

GALVIN & GALVIN for appellant.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the Kenton circuit court, law and equity division, entered upon a verdict awarding the appellee, Harold Rogers, an infant suing by his father as his next friend, $1,600.00 in damages against the appellant, Chesapeake & Ohio Railway Company, for personal injuries resulting in the loss of an eye, sustained, as alleged, by the infant through the negligence of its servants and employes.

The action was originally brought against the appellant, Chesapeake & Ohio Railway Company, the Louisville & Nashville Railroad Company, and the Covington & Cincinnati Elevated Railroad, Transfer and Bridge Company. There were two trials of the case in the court below. On the first, which was a joint trial as to all the defendants, at the conclusion of the evidence the jury, in obedience to a peremptory instruction from the court so directing, returned a verdict in behalf of the Louisville & Nashville Railroad Company and the Covington & Cincinnati Elevated Railroad, Transfer and Bridge Company, the judgment entered upon which abated the action as to them. The court refused to direct a like verdict for the appellant, and submitted the case to the jury as to it, the submission resulting in a verdict against it in favor of appellees for $2,950.00 damages. The appellant thereupon filed a motion and

grounds for a new trial, which the court sustained for the reason, as stated, that the verdict was flagrantly against and unsupported by the evidence. The second trial resulted in a verdict and judgment against the appellant for the amount of damages stated in the first paragraph of the opinion. The latter again filed motion and grounds for a new trial, but the motion was overruled.

Each of the two grounds, filed in support of its motion for a new trial in the court below, is now relied on by the appellant for the reversal of the judgment asked of the court. The first is that the trial court erred in overruling its motion, made at the close of the appellees' evidence, and again at the conclusion of all the evidence, for an instruction peremptorily directing a verdict in its behalf. As this contention must be tested by the evidence, that introduced in behalf of the appellees will now be considered. But before doing this it will be well to mention certain admitted facts respecting the manner in which the infant appellee sustained his injuries and his environment when and just before they were received. The lines both of the Chesapeake & Ohio Railway Company and Louisville & Nashville Railroad Company run through the city of Covington, coming together at Seventh and Washington streets in that city. At this junction of the two railroads, known as the K. C. Junction, there is a triangular space upon which the two railroad companies maintain a small rest room, called in the record a "shanty," with a small platform in front for the accommodation of passengers wishing to take or leave a train at that point. Besides the stopping at the K. C. Junction of passenger trains of the Chesapeake & Ohio Railway and Louisville & Nashville Railroad Companies for the accommodation of passengers, the cars of the Covington & Cincinnati Elevated Railroad, Transfer and Bridge Company are also stopped there for a like purpose, and in addition the trains of the Pennsylvania, Baltimore & Ohio and other railroads from Cincinnati were daily moved over the tracks and frequently stopped at the same point.

On September 12, 1916, the date of the accident, Harold Rogers, the infant appellee, then about six years of age (eight years of age at the time of the second trial), resided with his parents on Kellogg street in the city of Covington, within a square of the K. C. Junction. Ac-

cording to his testimony, while playing on the platform in front of the shanty at the K. C. Junction, he picked up five tin signal torpedoes, which he carried to his home, where he struck one of the torpedoes with a hammer, which caused it to explode and injure his hand and right eye, the injury to the eye causing its removal by a surgeon on the following day. He did not claim to know nor did he or any other witness testify when, by whom or for what purpose the torpedoes were placed or left on the platform. It was alleged in the petition that they were negligently left on the platform by some servant or employe of the appellant, but no evidence was introduced by the appellees which conduced to support this allegation. Much of the evidence in their behalf is of the character indicated by the testimony of the infant appellee's mother, who stated that for several years before the accident in question she was in the employ of the appellant and the Louisville & Nashville Railroad Company as a cleaner of their passenger coaches, which work was performed by her in the shop yards of those companies, situated several squares distant from the K. C. Junction, where the coaches were left on the side tracks for that purpose, and that while cleaning coaches of the appellant she had several times found therein tin torpedoes of the character of those claimed to have been found by her son on the K. C. Junction platform, but had never discovered any torpedoes of like character in the coaches of the Louisville & Nashville Railroad Company. Whether or not the torpedoes seen by her in the appellant's coaches were in receptacles provided for their safekeeping does not appear from the testimony of the witness; but it does show that torpedoes and other supplies and appliances with which trainmen are required to be provided, were kept in and distributed from a building in the yards where the coaches were cleaned.

The witness also testified that while in the employ of the Chesapeake and Ohio Railway and Louisville & Nashville Railroad Companies, she, on one occasion prior to the injury to her son's eye, saw standing on a side track at the K. C. Junction a motorcycle railroad, or hand car of the character commonly used by railroad section hands in making track repairs, which, among other things, in the way of equipment usually carried by such

cars, had on it a box or basket containing a number of torpedoes. Her testimony, however, failed to show that the hand car was owned by the appellant, or that it did not belong to some other railroad company. But conceding that the torpedoes on the hand car were owned by the appellant and that they were seen by the witness while in the latter's employ, as she testified that she quit its service and that of the Louisville & Nashville Railroad Company in 1914 and her son's injuries admittedly were not received until 1916, two years later, it is not perceived how her discovery of the torpedoes on the hand car, or of those found by her in cleaning its coaches in the yards, could have any probative effect in connecting appellant with the ownership of the torpedoes found by her son, as claimed, on the platform at the K. C. Junction, or as tending to prove that their presence on the platform resulted from the negligence of any of its servants.

There was no evidence introduced in the appellees' behalf which conduced to prove that the torpedoes, claimed to have been found on the platform at the K. C. Junction by the infant appellee, were ever in the possession of the appellant or any person in its employ; but it was shown by their evidence that neither torpedoes nor other supplies required in the operation of trains were kept in the small room at the K. C. Junction; also, that no agency was maintained there for the sale of tickets; and that the only object of the railroad companies in maintaining the room there was to afford shelter and a resting place for passengers taking or leaving trains at that point. Although, as previously remarked, it was testified by the mother of the infant appellee that, while employed as a coach cleaner in the railroad yards of the appellant and the Louisville & Nashville Railroad Company, she had seen in some of the coaches of the former, but not in those of the latter, torpedoes like the one by which her son was injured, she did not testify, nor did any other witness introduced by the appellees, that torpedoes of like character were not kept or used on the trains of the other railroad companies which pass or stop at the K. C. Junction.

Appellees also introduced as witnesses in their behalf appellant's superintendent, W. S. Taylor, charged for many years with the duty of keeping in repair its railroad tracks in the city of Covington and contiguous territory, and W. H. Stowasser, keeper since 1911 of appel-

lant's storeroom in the Covington railroad yards from which torpedoes and other supplies for the use of its trainmen and switchmen in Covington and vicinity were distributed, the former of whom testified that tin torpedoes had not been used by appellant or its employes in or near Covington for more than twenty years; and the latter that such torpedoes had not been kept by appellant in its storehouse or supplied its trainmen or switchmen since he took charge of the storehouse. Each of these witnesses further testified that, during the times mentioned and when the infant appellee received his injuries, the appellant used and is now using in the city of Covington and vicinity what is known as the "fibered" torpedo and no other.

We think the foregoing statement of appellees' evidence fairly presents its full meaning and effect; and to this must be added our conclusion that it wholly fails to furnish any reason for holding that the injuries sustained by the infant appellee were caused by the negligence of the appellant or any of its servants. Negligence will not be presumed from the mere occurrence of an accident resulting in injury, but must be established by evidence of the fact, or by circumstances evidentially shown from which the fact reasonably may be inferred. Therefore, in an action to recover damages for a personal injury, alleged to have been caused by the negligence of the defendant, there must be some evidence to show such negligence and that it was the proximate cause of the injury. Recovery cannot be had on mere surmise or speculation as to how or why the accident occurred. Between the negligence and injury there must be a direct connection; and while this may be shown by indirect evidence, it cannot be established by building inference upon inference. Weidekamp's Admr. v. L. & N. R. R. Co., 159 Ky. 674; Wood v. Cumb. T. & T. Co., 151 Ky. 77; Lunsford v. L. & N. R. R. Co., 153 Ky. 283; Stone v. Van Noy Ry. News Co., 153 Ky. 240; Hearell's Admr. v. I. C. R. R. Co., 185 Ky. 41; L. & N. R. R. Co. v. Campbell's Admr., 186 Ky. 628.

In Weidekamp's Admr. v. L. & N. R. R. Co., *supra,* it is said: "Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents; there must be some tangible evidence from which it may be fairly said what brought about the accident. It has long been the rule in this state that no recovery can be had in such cases where the evidence is so unsat-

isfactory as to require surmise or speculation as to how the injury occurred, and that there will be no presumption of negligence.''

Giving to the appellees' evidence its fullest effect, and allowing them the benefit of every fair inference that may be deduced from it, it establishes but two facts, namely, that the infant appellee's eye was destroyed by the explosion of a torpedo found with four others by him at the K. C. Junction, but wholly fails to establish the additional fact indispensably necessary to a recovery, viz.: that the torpedoes, one of which destroyed his eye, were by the negligence of the appellant, or that of one of its servants, acting in the performance of some duty for it, left where they were found by the infant appellee. This hyatus in the evidence necessarily left to surmise and speculation on the part of the jury the question whether the injuries complained of were caused by the appellant's negligence.

In Conley v. Ennis' Admr., 170 Ky. 125, the case was one in which a boy was killed by the explosion of a torpedo, found with others by the decedent in a box near his father's residence. It was claimed that this box, through the negligence of the defendant, fell from a tool house being transported by him on a motor car, of which there was no evidence, but there was evidence tending to prove that torpedoes like the one by which the infant was killed fell from the tool house several squares from his father's home three days before the infant's death. There was a recovery in the court below of damages for the boy's death, but the judgment was reversed on appeal, the court holding that the negligence of the defendant in permitting torpedoes to fall from the tool house at a distance several squares from the boy's residence three days before the latter's death was not made to appear from the evidence the proximate cause of the death. In thus holding we, in part, said:

''In a personal injury action the proven injury must be shown to have been the direct or proximate result of proven negligence; and unless the evidence shows such connection, directly or by fair inference, there can be no recovery; and if there is a failure of evidence on any one material point, it is fatal to him having the burden.'' Carter Coal Co. v. Smith, 173 Ky. 843.

In addition to the failure of the appellees' evidence to connect appellant with the leaving of the torpedoes where the infant appellee found them, it also fails to show that they were not left there by a servant of some one of the other railroad companies whose trains pass or stop at K. C. Junction.

The appellant was under no duty to account for the presence of the torpedoes where they were found by the boy. That duty rested upon the appellees, whose evidence, instead of placing upon the appellant any responsibility for leaving the torpedoes where they were found by the infant appellee, exonerated it from any connection therewith. Indeed, appellees' evidence merely creates a suspicion that the torpedoes were dropped on the K. C. Junction platform by an employe of some one of the railroad companies other than appellant, whose trains pass or stop at that point, without any showing of negligence on the part of such employe in so doing.

As said in Louisville Gas Co. v. Kaufman & Straus Co., 135 Ky. 131, and numerous subsequent cases:

"When the question is one of negligence or no negligence, it is well settled law that, where the evidence is equally consistent with either view—the existence or nonexistence of negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it." Hughes v. Railroad Co., 91 Ky. 526; Wintusky's Admr. v. Railroad Co., 14 R. 579; Dana & Co. v. Blackburn, 121 Ky. 706; McDonald's Admx. v. L. C. W. and R. S. Co., 149 Ky. 801.

As it is our opinion the trial court's refusal of the per emptory instruction directing a verdict for the appellan at the conclusion of the appellees' evidence was such erro as will compel the reversal of the judgment, it will be un necessary to discuss the appellant's evidence, which wa equally conclusive of its right to a verdict; or to consider its second and final contention that the verdict returned is flagrantly against the evidence. If on another trial the evidence of the appellees' is the same as on the last, the court should instruct the jury to return a verdict for the appellant.

Judgment is reversed for a new trial consistent with the opinion.