# Illinois Central Railroad Company v. Cash's Administratrix.

(Decided November 1, 1927.)

## Appeal from McCracken Circuit Court.

1. Negligence.—One may allege negligence in general terms and is entitled to show specific acts of negligence under such an allegation.

2. Negligence.—When a party alleges specific acts of negligence, he cannot show general negligence or other specific acts of negligence, but he is confined to the specific negligence alleged.

3. Negligence.—Negligence will never be presumed, but it must be proven either.by showing direct acts of negligence or by showing facts from which negligence is inferable.

4. Negligence.—In determining whether negligence has been established by proof of direct acts of negligence or by proof of facts and circumstances rendering negligence inferable, all facts and circumstances established in support of negligence alleged must be considered.

5. Negligence.—"Negligence" is a relative term dependent on the facts and circumstances and it may be defined as a failure or omission to do that which an ordinarily prudent man would do under the same conditions and circumstances, or a failure to abstain from doing that which he would not do.

6. Negligence.—In order for plaintiff to recover for negligence, the evidence must show existence of duty owed by defendant to plaintiff, violation of that duty by defendant, and damage to plaintiff by reason thereof.

7. Negligence.—Person responsible for negligent act is liable to person injured as a result thereof, if the doing of the act would lead an ordinarily prudent person under like conditions and circumstances to anticipate or foresee that the act would result in an injury to some person; but he is not liable, if the ordinary experiences of humanity would not lead an ordinarily prudent person to reasonably anticipate or foresee that injury would result.

8. Negligence.—Where evidence on issue of negligence is equally consistent with existence or nonexistence of negligence or is so unsatisfactory as to require speculation or surmise on part of jury as to how injury occurred, the case is not for the jury, but for the court, which should hold as a matter of law that defendant is not liable.

9. Negligence.—Evidence on issue of obvious danger is sufficient to warrant submission to jury, if reasonable men may differ as to fair inferences and conclusions to be drawn therefrom.

10. Hospitals.—Evidence held insufficient for jury on issue whether hospital was negligent, on ground that patient, while delirious and not watched, unconsciously left his bed and room on one or more occasions.

11. Hospital.—Mere fact that hospital knew that patient was in delirious condition did not establish that it was negligent in preventing him from jumping out of window.

12. Hospitals.—In action against hospital for death of delirious patient, who jumped from window of room on second floor of hospital, evidence held insufficient to warrant submission to jury on issue whether hospital was negligent in refusing to permit mother of delirious patient to remain in his room with him to protect him from injuring himself.

13. Hospitals.—In action against hospital for death of delirious patient, who jumped from 'window of room on second floor of hospital, evidence held insufficient to warrant submission to jury on issue whether hospital was negligent in failing to provide competent or sufficient nurses or attendants to care for him or to prevent him from injuring himself; there being at most mere ground for surmise or speculation.

14. Hospitals.—Hospital, sued .for death of delirious patient, who escaped from retaining sheet and jumped from window of room on second floor, held not an insurer, but bound only to exercise ordinary care.

15. Hospitals.—In action against hospital for death of delirious patient, who jumped from 'window of room on second floor of hospital, evidence held insufficient to warrant submission to jury on issue whether hospital used such means as it had at hand to prevent patient's escape.

16. Hospitals.—Hospital might not be held guilty of negligence in leaving window open in room of delirious patient, who escaped from restraining sheet and jumped out of window, if the hospital doctor, who directed that the window be left open, was not negligent in doing so.

17. Hospitals.—In action against hospital for death of delirious patient, who jumped out of window of room on second floor of hospital, evidence held insufficient to warrant submission to jury on issue whether hospital was negligent in leaving the window open.

TRABUE, DOOLAN, HELM & HELM, WHEELER & HUGHES and R. V. FLETCHER for appellant.

C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Robert Cash was an employee of appellant residing in Paducah, Ky. He was stricken with a serious case of pneumonia, and, upon his application, he was admitted for treatment to the hospital at Paducah conducted by the Illinois Central Hospital Department. At the time he was admitted he was seriously ill. He was placed in a private ward and two special nurses were assigned to his case, a day nurse and a night nurse. He received medical attention from the doctors, whose duty it was to give such attention to patients in this hospital. In spite of the attention he received he grew worse. On one occasion, two or three days before his death, he left his bed and went to a toilet on the same floor in the rear of the building. He was admonished about having done this and promised that he would not do it again. He went to the

hospital on Tuesday, February 23, 1926, and on Friday, following, the disease had progressed until he became delirious. About 10 o'clock on Friday night he was wildly delirious and left his bed. It required the combined strength of Dr. Buenafa, an interne in the hospital, and several nurses, to return him to his bed. A restraining sheet was then placed on him by the interne and the nurses. This was to prevent his moving about on the bed or from again getting out of the bed. The restraining sheet is made of strong cloth, with holes for his arms and legs, and straps for fastening under the bed, so that the patient may be securely held in place. After the restraining sheet had been placed on him and a sedative administered by a hypodermic injection, he became quiet and apparently slumbered. The special nurse, Miss Roundtree, was left in charge of him, and from time to time the interne and other nurses called at her room and saw the patient apparently sleeping quietly. This condition continued for about an hour when he suddenly aroused, freed himself from the restraining sheet, so frightening his nurse that she screamed, but before others could come to her assistance he leaped over the screen between the window and his bed and immediately jumped through a second story window, which was open at the time, and fell to the pavement below, thereby sustaining serious injuries.

Other nurses hastened to the room and finding him gone they went immediately to him where he was lying on the pavement under the window. He was picked up and carried into the waiting room and there examined by the doctors before he was returned to his room. The restraining sheet was again placed on him and the next morning an hour or more prior to his death he succeeded in partially releasing himself from the sheet. He died on the morning of Saturday, February 27, 1926. He was 26 years of age and a fireman for appellant. He was a man of great strength and his weight is placed by different witnesses at from 180 pounds to 200 pounds.

His wife, Georgia Cash, was appointed administratrix of his estate, and she instituted this suit against the Illinois Central Railroad Company, Virgil Powell and Will T. Dowdall. She alleged in her petition that the appellant owned and operated a hospital in Paducah, Ky., for compensation and profit to itself, and that Virgil

Powell and W. T. Dowdall were physicians and surgeons in charge of, managing, controlling, and directing the maintenance and operation of the hospital. She alleged that Robert Cash at the time of his death was entitled to the care and attention while in the hospital necessary to protect him from injury to himself. It is denied by appellant that it operates the hospital, and it is alleged that the hospital is operated by the Illinois Central Hospital Department, a separate organization, and that the hospital is purely a charitable institution.

For the present we will lay these questions to one side and first ascertain whether there is liability, assuming that appellant operates and controls the hospital and that it is not a charitable institution. If appellant is not responsible, although it might be established that the hospital is not a purely charitable institution, and although it might be established that appellant owns, operates, and controls the hospital, it will not be necessary for us to determine these questions.

The negligence alleged in the petition will be considered carefully as the case has been fully developed on all points by the able counsel representing both sides. Nothing seems to have been overlooked. The acts of negligence set out in the petition may be summarized as follows:

(1) That Robert Cash "was critically and seriously ill, and, while there, became delirious, and, when not watched and cared for by attendants, would leave his bed and unconsciously leave the room, and on one or more occasions prior to the time of his death, of which the defendants had knowledge, had done so. Defendants each and all knew of her decedent's delirious and probable violent manner and condition prior to his fall and thereat."

(2) That the hospital authorities "had been importuned to allow the relatives of decedent to stay with and aid in the care and attention necessary to protect him from injury to himself, but each and all of the three defendants refused to allow any of them to remain or be present with her decedent to aid in furnishing to him the care and attention necessary the night of, and prior to, his fall and death."

(3) That "all of the defendants, with gross carelessness and negligence, failed to provide com-

petent or sufficient nurses or attendants to care for him and prevent her decedent, who was delirious and violent, and known to each of the defendants to then be so, from causing injury to himself.''

(4) That defendants ''so failed to provide any means whatsoever to prevent her decedent leaving and escaping from said room while in a then known delirious and violent condition, and so failed otherwise to furnish protection to her decedent against his' injuring himself, or to properly care for him, while and when each and all of said defendants knew of her decedent's then delirious and violent condition, though it was their duty to do so.''

It is then alleged, that, by the joint and concurring gross carelessness and negligence of the Illinois Central Railroad Company and its agents and employees and of Virgil Powell and W. T. Dowdall in doing and failing to do as set forth in the petition, they, and each of them, caused and permitted her decedent to jump or fall from a second story window of said hospital of the defendants, a distance of 30 feet or more, which fall resulted in the serious injuries mentioned, and which caused or produced within a few hours thereafter his death.

In an amended petition appellee alleged another ground of negligence as follows:

(5) That defendant ''did not, but by gross carelessness failed and refused to furnish to her decedent a safe and secure room in the Paducah Hospital during the time he was sick, and when he was injured and died thereat; and defendant further, by gross carelessness and negligence, failed and refused to provide and furnish, and failed and refused to appoint, select, or employ, sufficient attendants, or sufficient or proper or competent, careful, skillful, and experienced medical aid and attention to her decedent, and negligently and carelessly by gross negligence otherwise failed in its duty under said contract to her decedent.''

We have set out the specific acts of negligence alleged in the petition and amended petition. Negligence may be alleged in general terms and the plaintiff, under such an allegation, should always be permitted to show specific acts of negligence; but when the plaintiff under-

takes to specifically set forth the negligent acts complained of, he cannot prove or rely upon others. Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Manwaring v. Geisler, 196 Ky. 110, 244 S. W. 292; L. & N. R. Co. v. Benke's Adm'r, 176 Ky. 259, 195 S. W. 417; Daniel Boone Coal Co. v. Turner, 181 Ky. 756, 205 S. W. 931; L. & N. R. Co. v. Feeney, 166 Ky. 699, 179 S. W. 826; Woodrow v. High Splint Coal Co., 194 Ky. 30, 238 S. W. 184; L. & N. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084.

It is also well established in this state that, where specific negligence is pleaded, proof of general negligence is not admissible. Where the plaintiff relies on specific negligence in the development of his cause of action, he is confined to the negligence alleged and no other. C. & O. Ry. Co. v. Cooper, 168 Ky. 137, 181 S. W. 933; L. & N. R. Co. v. Horton, supra; Hart v. Roth, 186 Ky. 535, 217 S. W. 893; L. & N. R. Co. v. Kirby, 173 Ky. 399, 191 S. W. 113.

The only questions which we are called upon to consider in determining whether appellant was guilty of negligence are those enumerated above as taken from the petition and amended petition of appellee. If appllee is entitled to recover, it must be because she has established negligence on one or more of the points alleged.

It is well settled that negligence is never presumed; it must be proven. Either the direct acts of negligence must be shown by the proof or such facts must be established by the proof from which negligence is inferable. All facts and circumstances established by the proof in support of the negligence alleged must be considered in determining whether direct acts of negligence have been established, or, if not so established, whether the facts and circumstances are such as render it reasonably apparent that negligence must be inferred. Stull's Adm'x v. Ky. Traction & Terminal Co., 172 Ky. 650, 189 S. W. 712; Johnston's Adm'r v. East Tennessee, V. & G. Ry. Co., 30 S. W. 415, 17 Ky. Law Rep. 67; L. & N. R. Co. v. S. W. 415, 17 Ky. Law Rep. 67; L. & N. R. Co. v. McGary's Adm'r, 104 Ky. 509, 47 S. W. 440; Vissman v. Southern R. Co., 89 S. W. 502, 28 Ky. Law Rep. 429, 2 L. R. A. (N. S.) 469; Lucas Land & Lumber Co. v. Cook's Adm'r, 166 Ky. 584, 129 S. W. 582; Louisville R. Co. v. Potter, 175 Ky. 258, 194 S. W. 308; Hearell v. I. C. R. Co., 185 Ky. 41, 213 S. W. 561.

Negligence is a relative term dependent upon the facts and circumstances in each case, and it may be defined as a failure, or an omission to do, or to abstain from doing, that which an ordinarily prudent man would do under the same conditions and circumstances. Kelch's Adm'r v. National Contract Co., 178 Ky. 632, 199 S. W. 796. It has been said that there are three elements which must be established by the evidence before a plaintiff may recover for negligence. The first is that the evidence must disclose the existence of a duty which the defendant owed to the plaintiff. The second is that the evidence must disclose that the duty which the defendant owed to the plaintiff was violated by the defendant. The third element which must be disclosed by the evidence is that the plaintiff was damaged by reason of the violation of the duty which defendant owed to plaintiff as established by the evidence. Gosney v. L. & N. R. Co., 169 Ky. 323, 183 S. W. 538, L. R. A. 1916E, 458.

The fact that a defendant has been guilty of negligence followed by an accident does not always mean that the defendant is liable for the resulting injury. The resulting injury must have been occasioned by the negligence. It is the breach of some duty to the plaintiff which renders the defendant responsible to him for any resulting injury. Ky. & Tenn. R. Co. v. Minton, 167 Ky. 516, 180 S. W. 831; Staley v. Wehmeier, 187 Ky. 445, 219 S. W. 408; Leonard v. Enterprise Realty Co., 187 Ky. 578, 219 S. W. 1066, 10 A. L. R. 238.

A defendant is only liable for negligence where injurious consequences may have been reasonably anticipated as the result of the act constituting the negligence. If the doing of a thing would lead the mind of an ordinarily prudent person under like conditions and circumstances to anticipate or foresee that the thing done would result in an injury to some person, then the person responsible for the act is liable to the person injured as a result of the act. Leonard v. Enterprise Realty Co., supra; L. & N. R. Co. v. Phelps' Adm'r, 181 Ky. 689, 205 S. W. 793; L. & N. R. Co. v. Wright, 183 Ky. 634, 210 S. W. 184, 4 A. L. R. 478.

The converse of the rule last stated is also true. If the ordinary experiences of humanity in connection with a particular act do not lead an ordinarily prudent person under the conditions and circumstances under which the act is performed to reasonably anticipate or foresee that

an injury will result from the doing of the act, then the one doing the act cannot be held responsible for resulting injuries to another.

Before considering the facts and circumstances as developed in this case and as they have application to the alleged negligence, we will allude to another well-established rule relating to the sufficiency of the evidence, and circumstances to establish negligence, or a state of facts from which negligence may be inferred. It has been held that, where the evidence is equally consistent with the existence or nonexistence of negligence, the case is not one for the jury, but the court, and the court should hold as a matter of law that the plaintiff is not liable to the defendant. Bingham v. L. & E. R. Co., 185 Ky. 48, 213 S. W. 204; C. & O. Ry. Co. v. Rogers, 193 Ky. 571, 237 S. W. 18.

If the evidence is so unsatisfactory as to require speculation or surmise on the part of the jury as to how the injury occurred, no recovery can be had by plaintiff against the defendant. Gregory's Adm'x v. Director General of Railroads, 195 Ky. 289, 242 S. W. 373; Poll v. Patterson, 178 Ky. 22, 198 S. W. 567; Siemer v. C. & O. R. Co., 180 Ky. 111, 201 S. W. 469; L. & N. R. Co. v. Stokes' Adm'x, 166 Ky. 142, 179 S. W. 47.

It is well established, however, that, when the evidence on the issue of obvious danger is such that reasonable men may differ as to fair inferences and conclusions to be drawn therefrom, the question is one for the jury. Frankfort Elevator Coal Company v. Williamson, 191 Ky. 674, 231 S. W. 241.

Bearing in mind these general principles which have been so well established by this court, we will take up the grounds of negligence alleged in the petition and amended petition as outlined and numbered above. Considering the first ground, it is admitted that Robert Cash was critically and seriously ill when he went to the hospital, and while there he became delirious. But it is not established by the evidence that while he was not watched and cared for by attendants he unconsciously left his room on one or more occasions prior to the time of his death. The evidence shows that he left his bed and his room on one occasion only, but he was not unconscious at the time, and there is no evidence tending to show that he was not in full possession of all of his mental faculties. If there was negligence in allowing him to leave his room on this occasion, it certainly did not re-

sult in the tragedy which later occurred. There is no negligence, therefore, established under this ground relating to his leaving his room on one or more occasions prior to his death. It is shown that those in charge of him did know of his delirious condition prior to the time of his death, but that knowledge alone does not establish negligence, unless appellant failed in some duty after learning of this delirious condition. As to whether there was such failure will be discussed under the third ground enumerated as having been taken from the petition.

The second ground of negligence, as set out above, relates to the refusal of appellant to allow relatives of decedent to stay with and aid in the care and attention necessary to protect him from injury to himself. We find no evidence in the record which could be considered as establishing negligence under this head. It is true that the evidence discloses that his mother requested permission to remain in his room during the night on which the tragedy occurred, but she did not offer as a reason for her request, if it was made, that she desired to furnish him any care or attention which would prevent his bringing about an injury to himself. She made the request, if at all, for no reason other than the feeling of a mother for her son who was seriously ill and in a dangerous condition. We find nothing which would indicate that the refusal of the nurses to allow the mother to remain in the room, if there was any such refusal, had anything to do with the death of appellee's decedent. Certainly it would be no more than a surmise or speculation to say that, if the mother had been allowed to remain with the son during the night, he would not have received his injury. He was unconscious and delirious, or, at least, he was delirious to such an extent that he did not know or recognize any one.

The third ground relied on is that appellant failed to provide competent or sufficient nurses or attendants to care for him or to prevent him from causing injury to himself. We have read the evidence with great care and have read the brief submitted by counsel for appellee, and listened to his able oral argument, and, moreover, we have read with care the evidence on this point. The nurses in charge of appellee's decedent, as well as all the other nurses at the hospital, are shown by the evidence to have been graduate nurses and entirely competent. This is not disputed and no act of theirs while rendering assistance to this unfortunate young man

tends to show that they were not competent. Neither is there any evidence to show that a sufficient number of nurses were not provided. The proof shows that a nurse was in constant attendance, and there is nothing in the record which shows or tends to show that in such cases more than one nurse is required to remain constantly in the room with such cases of illness. A number of other nurses were on the same floor, and that they responded readily and with alacrity when called upon is shown as their conduct relates to this particular patient. When he became violently delirious a short time before he threw himself from the window, other nurses hastened to the assistance and relief of the nurse in charge of him. Not only the nurses were at hand, but the interne and the colored orderly were promptly brought to the scene. Undoubtedly there were a sufficient number of competent nurses to look after and care for appellee's decedent, unless something unusual and unforeseen should happen, and we do not believe that it can be well said that appellant was called upon to provide against the happening of something which could not be anticipated or foreseen.

It is urged with vigorous insistence that Dr. Buenafa was not competent, and that in some way he is responsible for the accident; but there is no proof which even remotely established that he was responsible for what happened, unless it should be that he did not see to it that the restraining sheet was properly placed upon the patient. It is true that he was a young Filipino; but he was a graduate of the University of Nebraska, which, at least, should satisfy any ordinarily prudent man that he had intelligence and education. His good character is not attacked. He responded promptly at the only time he was called on for assistance. He succeeded in placing appellee's decedent in the bed. It is true he was assisted by others. He placed the restraining sheet upon him with the assistance of others, and there is no one who testified that it was not properly placed upon him. The nurses who assisted testified that it was properly placed upon him, and Dr. Buenafa himself so testified. True it is that he escaped from the restraining sheet and no one offers an explanation as to how he succeeded in doing so. It does not appear that it could be done, and yet it was. In making his escape he left his nightshirt still in the restraining sheet.

It is argued that the fact of his escape shows that the restraining sheet was not sufficient for what it was intended, or that it was negligently placed upon him. In our opinion this is the nearest approach to negligence established. But how could any jury do more than to surmise or speculate as to how he escaped from the restraining sheet? A jury is not allowed to surmise or speculate about such matters. The fact that he escaped, it might be said, is a circumstance from which negligence might be inferred, but we do not think so, because at least one of the doctors familiar with the use of such restraining sheets testified that sometimes patients escaped from them, although he could not explain how such escape could be effected. Assuming that the escape from the restraining sheet is a circumstance from which negligence could be inferred, still that is not enough. The question is, would a man of ordinary prudence under the same or similar circumstances have anticipated, if he did escape from the restraining sheet, that without warning he would immediately spring over the screen between his bed and the window and out of the window to the pavement below? Appellant was not an insurer against any and all accidents, but can only be held to the exercise of ordinary care.

The fourth ground relied on approached very nearly to a general allegation of negligence, and, if it should be so treated, evidence on that point should not have been admitted, and we could not consider that ground of negligence. But taking the petition as a whole we believe that the allegation made in general terms that appellant failed to provide any means whatsoever to prevent appellee's decedent from leaving and escaping from the room is so interwoven with the other allegations that it may be treated as meaning that appellant did not use such means as it had at hand to prevent his escape from the room as he did. But there is no evidence to show that no means whatsoever were used to prevent her decedent from escaping from the room. The restraining sheet had been placed upon him and he had been given a sedative. He was resting quietly a moment before he made his spectacular escape. Counsel for appellant seems to insist that a corps of able-bodied, well-trained nurses or employees should have been kept in the room for the purpose of preventing his escape. If appellant could have foreseen that he would suddenly arouse himself and spring out of the window, the argument ad-

vanced by counsel for appellee would have merit; but we have said that it cannot be held that an ordinarily prudent man would have foreseen that he might arouse himself and jump out of the window. The usual and ordinary thing was done for his protection, and there was nothing to indicate that more was required. It is true he had been violent; but violence does not indicate a suicidal mania, or that a patient will jump out of a window. We are persuaded that the act of the patient in this instance was unusual and extraordinary and was something which would not have been foreseen by an ordinarily prudent man in charge of such a patient. It is suggested that wristlets and anklets which were on hand might have been used; but the evidence shows that the restraining sheet is just as effective, and that it is the better practice to use it. It is true that one of the doctors said that he might have been able to do more than was done if he had been there; but neither counsel for appellant nor appellee were able to get him to state anything that he could have done that was not done, and upon being pressed he stated that he probably would have done exactly the thing which was done, and that his belief that he might have done more was founded upon that inherent feeling in the minds of most people that they could have done better than the other fellow if the opportunity had been given them.

The fifth and last ground upon which an allegation of negligence is based is that appellant failed and refused to furnish appellee's decedent a safe and secure room in the hospital during the time that he was sick and at the time he was injured. The only basis for this ground is that a window in the room was left open. The evidence establishes that modern methods of treating pneumonia cases require ventilation, and that it was proper to leave the window open. It was left open at the direction of one of the defendants against whom the evidence was not sufficient as held by the lower court to submit the case to the jury. If he was not negligent in directing that the window be left open, and the lower court so held, and there is no appeal from his action, appellant cannot be held guilty of negligence on that ground. Again adverting to the rule that a defendant is not to be held liable for an injury which an ordinarily prudent man would not have foreseen, we must hold that there was no negligence in leaving the window open.

We find it unnecessary to pass on the question whether the hospital is purely a charitable institution. If we should find that it was not a charitable institution and that appellant was responsible for its operation, still the case should not have gone to the jury.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.