## Watts v. Commonwealth.

(Decided December 15, 1922.)

### Appeal from Breathitt. Circuit Court.

Homicide—Indictment—Conspiracy—Trial—Instructions.—Where, on a prosecution for homicide, the indictment charged the accused (1) with having killed the deceased himself, (2) with having aided his codefendants in killing her and (3) with having conspired with his codefendants to kill her, and the indictment contained no charge that he conspired with his codefendants to rescue certain persons from jail, and that one of the conspirators killed the deceased while carrying out that conspiracy, it was prejudicial error to submit the last named conspiracy to the jury.

RIDDELL & SHUMATE, C. A. BACK and JOHN D. CARROLL for appellant.

CHAS.. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Appellant, William Penn Watts, who was jointly indicted with Bud Noble, Soldier Noble, Beecher Noble Tom Porter, Sam Grigsby, Hagins Noble, Luther Noble

and Lewis Watts, for the murder of Maggie Allen, was found guilty and his punishment fixed at death.

The facts are as follows: About a week before the homicide in question, Hargis Noble, Willie Noble, Alton Grigsby and Isaac Watts were convicted of the murder of Joe Napier, and sentenced to the penitentiary, the first three for life and Isaac Watts for a term of two years. Hargis Noble is a son of Bud Noble and a brother of Soldier and Beecher Noble. Willie Noble is a nephew of Bud and Luther Noble. Isaac Watts is a brother of appellant. After their conviction, Hargis Noble, Willie Noble, Alton Grigsby and Isaac Watts were confined in the Breathitt county jail, but a day or two before Maggie Allen was killed, Hargis Noble and Willie Noble were removed to the Clark county jail for safekeeping. Appellants and his codefendants, with the exception of Hagins Noble, who lives on Grapevine in Perry county, live on Lost creek, about eighteen miles from Jackson, and all of them were in Jackson as spectators or witnesses during the trial of their relatives for the murder of Joe Napier. On the day before Maggie Allen was killed, appellant, Bud Noble, Beecher Noble and Tom Porter, and perhaps others indicted with him, were at the home of Honeysuckle Noble at an "infair" given in honor of the latter's son, who had just been married. About three o'clock in the afternoon Bud and Beecher Noble employed appellant and Tom Porter to go to the home of Bud Noble's brother on Grapevine in Perry county to get a rifle, saying that they had arranged with the jailer to have their relatives released, and wanted the rifle for their use. A little after one the next morning, a crowd of from six to ten persons appeared at the Breathitt county jail and knocked on the door of the jailer's residence. When the jailer, A. A. Allen, appeared, he was told by the men that they had a prisoner to put in jail. After calling to his son, Oscar, to bring the keys, the men were admitted, and immediately went up the steps. Several shots were fired, and in the melee Maggie Allen and Albert Roberts, the deputy jailer, were mortally wounded, while Mrs. Oscar Allen received wounds from which she subsequently recovered. Of the men who made the assault on the jail, the jailer recognized Bud Noble, Tom Porter and Lewis Watts. Oscar Allen recognized Soldier Noble, and in her dying declaration Maggie Allen claims to have recognized Bud and Beecher Noble. There was also found a

hat which several parties identified as belonging to Bud Noble, and a pistol which had been dropped or thrown into the jail yard. About two o'clock on the same morning, appellant, Tom Porter and Hagins Noble appeared at the home of Duvall Back. One of them stated that his name was Noble and that he lived on Lost creek. Another stated that his name was Watkins. One represented that he lived in Winchester, and another that he lived in Beattyville. While one of the defendants was out of the room with Mr. Back, Mrs. Back, who was in bed, heard the other two defendants whispering and one of them said something about a hat and a pistol being lost. Appellant and Tom Porter both admit that they were at the infair, and that Bud Noble employed them to go to the home of his brother, Alfred, and get the rifle, and that appellant rode a mule belonging to Bud Noble, and Tom Porter rode a mule belonging to Kale Noble. When they reached the home of Dock Davidson on Grapevine, Hagins Noble, the son of Alfred Noble, joined them. They then went to Alfred Noble's, a distance of about 1½ miles and secured a gun. Bud Noble had instructed them to bring the gun to his house and, if he was not there, to meet him at the mouth of Quicksand, which was about three miles above Jackson. According to their testimony, appellant, Tom Porter and Hagins Noble left Alfred Noble's about four o'clock in the afternoon. Their first stop was at Dock Davidson's, where Hagins Noble changed his clothes. Their next stop was at the home of appellant's father, Hiram Watts. They reached there about nine o'clock at night, ate their supper and sat around about an hour. After leaving there, they secured another mule and went to the home of Bud Noble. Bud was gone, and after eating some more supper, they stopped at a place on Smith's branch, where they had a shooting match with some one. They then came to the mouth of Quicksand, but not finding Bud Noble, they stopped at the home of Duvall Back to get warm. After staying there for some time they turned and went back towards home, stopping at Hargis Salley's for about two hours, and also at Sam Grigsby's, where they ate breakfast. From there they returned to their home. Tom Porter testified that while engaged in the shooting affray before reaching Duvall Back's, he dropped his hat and gun, and that while in Duvall Back's house, he whispered to the boys and told them, "I like to have lost my hat and gun up there."

The indictment contained several counts. In the first count all of the defendants were charged with murder by shooting and wounding Maggie Allen. In the nine succeeding counts each of the defendants was charged as principal and all of his codefendants as aiders and abettors. The eleventh count charged that each and all of the defendants entered into a conspiracy with each other, and others to the grand jury unknown, to murder Maggie Allen, and while said conspiracy was in full force and effect Bud Noble, Soldier Noble or Beecher Noble, or some one or more of the defendants, or of the conspirators unknown to the grand jury, unlawfully, wilfully, feloniously and with malice aforethought shot and wounded Maggie Allen, from which shooting and wounding she died within a year and a day thereafter.

The court instructed the jury in substance to find appellant guilty if they believed from the evidence beyond a reasonable doubt (1) that he unlawfully, wilfully, feloniously and of his malice aforethought shot and killed Maggie Allen, or (2) that either of the other named defendants shot and killed her, and he was present aiding, abetting or assisting, or (3) that he entered into a conspiracy with other named defendants to kill Maggie Allen, and in pursuance of said conspiracy, and while same existed, any one or more of the parties to said conspiracy did unlawfully, wilfully, feloniously and with malice aforethought shoot and kill Maggie Allen, or (4) that appellant and the other defendants conspired and banded themselves together for the purpose of rescuing Hargis Noble, Willie Noble, Alton Grigsby and Ike Watts, or any one of them, from the Breathitt county jail, and that in pursuance of said conspiracy, and while same existed, the other defendants, or any one of them, attempted to rescue said persons, or any one of them, from said jail, and in making said attempt, the other defendants, or any one or more of them, unlawfully, wilfully, feloniously and with malice aforethought shot and wounded Maggie Allen, and that she died therefrom within a year and a day thereafter.

It will be observed that the only conspiracy charged in the indictment was the conspiracy to murder Maggie Allen, and that the indictment contained no count charging a conspiracy to effect a jail delivery. That being true, appellant insists that it was error to instruct on a charge not contained in the indictment.

The object of the indictment is to inform the defendant of the offense with which he is charged, and to that end the Criminal Code requires that "the indictment must contain a statement of the acts constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended," section 122, Criminal Code, and that "the indictment must be direct and certain as regards the particular circumstances of the offense charged, if they be necessary to constitute a complete offense." Section 124, Criminal Code. The requirement that the acts constituting the offense be given, or that the particular circumstances of the offense be stated with certainty, would be of little value to the defendant if the Commonwealth could prove and have submitted to the jury acts and circumstances altogether different from those alleged. On reading the indictment in this case, a person of "common understanding" would know that he was charged (1) with having killed Maggie Allen himself, (2) with having aided his codefendants in killing her and (3) with having conspired with his codefendants to kill her. In other words, he would know that he would have to meet the charge of conspiracy to murder Maggie Allen. He would never know that he would have to prepare to meet evidence tending to establish a conspiracy to rescue certain persons from jail. There is no analogy between this case and cases of a slight variance between the instrument alleged and that proved. With respect to such matters the law has always been fairly liberal to the prosecution, and where the instrument alleged and that proved are of substantially the same character, capable practically of inflicting the same nature of injury, in substantially the same manner, there is no variance. State v. Washington, 104 La. 443, 29 S. O. 55, 81 A. S. R. 141; Elliott v. State, 4 Okla. Cr. 224, 111 Pac. 820. Thus, a charge of murder by a particular sort of firearm may be sustained by proof of another sort, Turner v. State, 97 Ala. 57, 12 So. 54, and a charge of assault with a railroad spade is sustained by proof of a shovel. Willis v. Commonwealth, 46 S. W. 699, 20 K. L. R. 368. However, the rule is confined to cases where the nature and character of the injury, and the manner and means of inflicting it, as proved are practically and substantially, though not identically, the same as those alleged, and it is well settled that an indictment charging the killing in one manner will not support a conviction of killing in a

different manner. Gripe v. State, 165 Ind. 433, 112 A. S. R. 238. Thus a charge of murder by an instrument or blow is not supported by proof of a murder by poison. Clark v. Commonwealth, 111 Ky. 443, 63 S. W. 740; Lewis v. Commonwealth 42 S. W. 1127, 19 Ky. L. R. 1139. For the same reason it would seem that a charge of a conspiracy to murder a particular person is not supported by proof of a conspiracy to rescue certain persons from jail. But it is insisted that the giving of the part of the instruction complained of finds support in the case of Dorsey v. Commonwealth, 13 K. L. R. 359, 17 S. W. 183, where it was held proper in an indictment charging one of the defendants as principal, and the other as aider and abettor, to instruct on the subject of conspiracy, though no conspiracy was alleged in the indictment. We find, however, that in the more recent cases of Twyman v. Commonwealth, 33 S. W. 409, 17 K. L. R. 1038, and Taylor v. Commonwealth, 90 S. W. 581, 28 K. L. R. 819, a different view of the question was taken, and it was held error to instruct as to a criminal conspiracy when not charged in the indictment. Without attempting to reconcile these cases, or to decide which is the proper doctrine it is sufficient to say that when a defendant is jointly indicted with others for murder, it is not going far afield to prove that he and his codefendants agreed in advance to do the very thing charged in the indictment and to submit such agreement to the jury. In this case, however, the instruction submitted an agreement to do something altogether different from that charged in the indictment. As it is apparent from the record that appellant was convicted on the ground that he was a member of a conspiracy to rescue certain persons from jail, and that in carrying out that conspiracy one of his co-conspirators shot and killed Maggie Allen, it cannot be doubted that the submission of such a conspiracy to the jury was prejudicial error. The case of Anderson v. Commonwealth, 144 Ky. 215, 137 S. W. 1063, is not in conflict with the views herein expressed. In that case a conspiracy to whip Del Carroll was charged in the indictment, and the submission of the conspiracy to the jury was held proper.

We find no other error in the record.

Judgment reversed and cause remanded for new trial consistent with this opinion.

Whole court sitting.