# Ray v. Commonwealth.

(Decided February 8, 1929.)

(Rehearing Denied and Dissenting Opinion Filed October 25, 1929.)

OSSO W. STANLEY and DAVID SESSMER for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Rees—Affirming:

Appellant, Merimee Ray, was jointly indicted with George Gagnon in the Nelson circuit court for robbery. Gagnon was arrested, but forfeited his bond, and had not been again apprehended at the time appellant was tried. Upon his separate trial, appellant was convicted, and his punishment fixed at confinement in the penitentiary for a period of six years.

The evidence for the commonwealth tended to show that on a Sunday night in March, 1927, the appellant, accompanied by his father-in-law and a brother-in-law,

went to the home of Other Raser for the purpose of purchasing whisky. He wanted to purchase 100 gallons. Raser informed him that he had no liquor, but that he knew a young man in the neighborhood who could probably supply the quantity desired. Ray told Raser to ascertain if this party would accept $5.50 a gallon, and if he would to meet him at the mouth of Pottinger's lane on the Bardstown and Boston road on the following Tuesday night at 10 o'clock. On Tuesday morning Raser saw Witt Vittitoe and informed him of Ray's proposal. Vittitoe did not have 100 gallons of liquor, but he did have 65 gallons he was willing to deliver for the price offered. On Tuesday night, Witt Vittitoe, his brother Tom, and Other Raser loaded 65 gallons of liquor on a wagon drawn by four mules, and started out Pottinger's lane toward the Bardstown and Boston turnpike. When they arrived within about 100 yards of the intersection of the lane and the turnpike, they observed two automobiles parked on the turnpike near the mouth of the lane. One of the automobiles, bearing a license tag shown to be appellant's, was driven down the lane, and after passing the Vittitoes and Raser it was turned around and driven back to the turnpike. Raser identified Ray as one of the occupants of this car, which then proceeded out the turnpike toward Boston. The other car, a Cadillac, was then driven down to where the Vittitoes and Raser were, and George Gagnon and three unidentified men got out, and, representing themselves to be prohibition officers, at the point of pistols compelled Witt Vittitoe and Other Raser to stand by while the kegs containing the liquor were removed from the wagon and placed in the automobile.

In the meantime Tom Vittitoe, suspecting that all was not well, had escaped unobserved in the dark, and was hiding in a neighboring field, but where he could hear what was transpiring. After Gagnon and his three companions had departed with the liquor, Witt Vittitoe went to a neighbor's house and telephoned to Roscoe Waters, a constable, and informed him of what had occurred. On the following morning Waters obtained impressions of the tracks made in the mud in the lane by the tires of the two automobiles. These impressions indicated that one of the cars was equipped with three kinds of tires. He located appellant's automobile at the latter's home in Louisville, and it was equipped with tires similar to those on the car that had been driven into Pottinger's lane on the previous night. He also located a Cad-

illac car at the home of appellant, equipped with tires similar to those that had made the other impressions which he had taken. It developed that the Cadillac car belonged to George Gagnon, who was a roomer in appellant's home.

Appellant's defense was an alibi, and he introduced a number of witnesses, who testified that they were engaged in a card game at appellant's home during the evening the robbery is alleged to have occurred, and that appellant was in his home at all times during that evening from 7 o'clock until midnight. Appellant seeks a reversal of the judgment upon the following grounds: (1) The indictment is demurrable; (2) he was entitled to a directed verdict of not guilty; (3) the court erred in giving a conspiracy instruction, when there was no such charge in the indictment; and (4) the trial court erred in changing the substance of the verdict, which found appellant guilty of an offense not charged in the indictment.

Under ground 1 it is urged that the indictment does not conform to the requirements of sections 122, 124, and 126 of the Criminal Code, and is demurrable, because ambiguous, duplicitous, and lacking in certainty. The indictment reads as follows:

"The grand jurors of the county of Nelson, in the name and by the authority of the commonwealth of Kentucky, accuse Merimee Ray and George Gagnon of the crime of robbery committed in manner and form as follows, to wit: The said Merimee Ray and George Gagnon in the said county of Nelson on the —— day of March, 1927, and before the finding of this indictment did unlawfully, feloniously, by force and violence and by putting Witt Vittitoe in fear of bodily harm, did take, steal and carry away from the person and in the actual presence of said Vittitoe, against the will and consent of him the said Vittoe, 65 gallons of spirituous liquor, to wit, whisky, 6 10-gallon kegs and 1 5-gallon keg, and $11 in good and lawful money of the United States, the subject of larceny, all of said personal property being of value, and was so taken and carried away as aforesaid against the will and consent of said Vittitoe, the owner thereof, with the felonious and fraudulent intent then and there to convert the same to their own use permanently and to permanently deprive the owner of his property therein; that the said George Gagnon and three men whose names are un-

known to this grand jury did then and there, with force and arms, unlawfully, feloniously and by force and arms, and by putting in fear of bodily harm, did take, steal and carry away from Witt Vittitoe, from his person and in his actual presence and against his will and consent, the personal property as aforesaid, and that the defendant Merimee Ray was then and there present and near enough to and did unlawfully, feloniously and fraudulently aid, abet and assist his codefendant and said unknown and unnamed persons to commit the robbery aforesaid, against the peace and dignity of the commonwealth of Kentucky.''

While the indictment is inaptly drawn and awkwardly worded, we are of opinion that it is not open to the objections made to it by the appellant. Some of the words employed therein are mere surplusage, and might well have been omitted, and there might have been a more orderly arrangement of its allegations; but, when considered as a whole, it states the acts constituting the offense charged in such a manner as to enable a person of common understanding to know what is intended, and, with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case. Jackson v. Commonwealth, 187 Ky. 682, 220 S. W. 743; Johnson v. Commonwealth, 200 Ky. 342, 254 S. W. 1054. The strict common-law rules of technical construction no longer prevail in this state, but have been superseded by a practice more in conformity with a just and reasonable administration of the criminal law. Overstreet v. Commonwealth, 147 Ky. 471, 144 S. W. 751; Rutland v. Commonwealth, 160 Ky. 77, 169 S. W. 584; Merdith v. Commonwealth, 199 Ky. 544, 252 S. W. 894; Easterling v. Commonwealth, 216 Ky. 541, 287 S. W. 972.

The trial court was of the opinion that the indictment charges appellant and Gagnon as principals, and that the latter part thereof was insufficient to constitute a separate count against appellant as aider and abettor, and was surplusage. The effort to charge appellant as an aider and abettor, after charging him and Gagnon as principals, and without setting out the charge of aiding and abetting in a separate count, does not render the indictment as a whole defective.

In Grapes v. Commonwealth, 202 Ky. 760, 261 S. W. 271, Grapes was indicted with two others upon the charge of robbery. It was insisted that a demurrer to the indictment should have been sustained. The indictment is not set out in the opinion, but we have examined the record in that case, and find that the indictment is, in all material respects, similar to the indictment in this case. In the opinion in the Grapes case it is said: "The indictment is criticized as being vague, uncertain, and unintelligible, but it definitely and certainly charges the appellant and his two codefendants with every essential element of the crime of robbery and is indefinite only in that, after charging the defendants jointly with the commission of the crime, it alleges that one of the three actually took the money from Shawley, and that the other two were present aiding, assisting and abetting him in so doing, and that the grand jury did not know which was the principal and which the aiders and abettors. Criticism of the indictment is doubtless based upon this latter fact. This fact, however, did not render the indictment demurrable. It is the law in this commonwealth that the principal actor, aiders and abettors, and accessories before the fact, are all parties in the first degree and are equally guilty and may be so accused and convicted."

In Watkins v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329, an indictment for murder, charging two defendants as principals and as aiders and abettors in a single count, was held sufficient. We conclude, therefore, that the trial court did not err in overruling the demurrer to the indictment.

The evidence was ample to authorize the jury to find that a conspiracy between appellant and Gagnon existed, and that, pursuant to the conspiracy, the robbery was committed. But it is argued under ground 2 that intoxicating liquor unlawfully possessed is not the subject of larceny or robbery, and that defendant's motion for a directed verdict should have been sustained. In Ellis v. Commonwealth, 186 Ky. 494, 217 S. W. 368, 11 A. L. R. 1030, it was held that whisky was the subject of larceny, although it might not be legally sold; but the whisky in that case was lawfully possessed. Furthermore, the opinion in the Ellis case was rendered before the enactment of the national and state prohibition acts, and when there was no statutory provision that no property rights should exist in intoxicating liquor unlawfully possessed.

It is provided in the National Prohibition Act, known as the Volstead Act, that: "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title, or which has been so used, and no property rights shall exist in any such liquor or property." U. S. Code, title 27 (27 USCA) sec. 39; U. S. Comp. St. Ann. Supp. 1923, sec. 10138½m.

Section 8 of chapter 33 of the Acts of 1922, now section 2554a8, Kentucky Statutes, 1928 Supplement, provides that: "No property rights shall exist in any liquor or property designed for the manufacture of liquor, unlawfully obtained, possessed, held or used in violation of this act."

The rule seems to be well settled that, though property is unlawfully .possessed and the possessor has no enforceable property rights therein, yet it may be the subject of larceny. The rule is bottomed upon considerations of sound public policy, and a contrary rule would encourage lawlessness and create evils, the seriousness of which cannot be questioned. A careful consideration of state and federal prohibitory liquor laws convinces us that it was the intention of both the federal Congress and the state Legislature, in enacting the provisions relied on, to only affect the civil rights of one unlawfully possessing liquor, and to deprive such an one of any remedies for the recovery of liquor unlawfully held, or for damages for its confiscation or taking. It was not the intention of these legislative bodies to alter the inherent character of intoxicating liquor as personal property, so as to render highwaymen and robbers immune from criminal prosecution so long as they confine their activities to contraband property. In Commonwealth v. Rourke, 10 Cush. (Mass.) 397, the court said:

"The law punishes the larceny of property, not solely because of any rights of the proprietor, but also because of its own inherent legal rights as property; and therefore even he, who larcenously takes the stolen object from a thief whose hands have but just closed upon it may himself be convicted therefor, in spite of the criminality of the possession of his immediate predecessor in crime. . . . Of the alternative moral and social evils, which is the greater, to deprive property unlawfully acquired of all protection as such, and thus to discourage unlawful acquisition but encourage larceny; or to punish,

and so discourage larceny, though at the possible risk of thus omitting so far forth to discourage unlawful acquisition? The balance of public policy, if we thus attempt to estimate the relative weight of alternative evils, requires, it seems to us, that the larceny should be punished. Each violation of law is to be dealt with by itself. The felonious taking has its appropriate and specific punishment; so also has the unlawful acquisition.''

Appellant relies upon the case of People v. Spencer, 54 Cal. App. 54, 201 P. 130, decided by a District Court of Appeal of California, in which it was held that a demurrer was properly sustained to an indictment for burglary, where it was charged the entry was for the purpose of stealing a quantity of wine, upon the ground that there cannot be an ownership of intoxicating liquors manufactured for beverage purposes since the enactment of the Volstead Act, and that the, charge of larceny could not be predicated on the act of taking intoxicating liquors by one from the possession of another. The Spencer case was approved by another District Court of Appeal of California in People v. Bailey, 82 Cal. App. 700, 256 P. 281.

So far as our investigation discloses, these are, the only cases in which the view has been adopted that, by reason of a statutory provision that no property rights shall exist in intoxicating liquor unlawfully possessed, such liquor is not the subject of larceny. The decision in the Spencer case was criticized in State v. Schoonover, 122 Wash. 562, 211 P. 756 and People v. Kilpatrick, 79 Colo. 303, 245 P. 719. In the former case the court said:

"The state punishes the wrongful taking of personal property belonging to, or in the possession of, another because of the offense against the majesty of its laws and because of the inherent wickedness and criminality of the act, as well as because of the wrong done to the individual whose property is taken. Stated in another way, the state punishes larceny because it is larceny, and, that the guilty may not escape, it will treat any form of personal property having actual value as having value for the purposes of larceny, notwithstanding it may be unlawful for the possessor to have it in possession. Furthermore, the declaration of outlawry against intoxicating liquors and the declaration that there are

no property rights therein is for the purpose of dis couraging its possession, not for the purpose of encouraging larceny, and it is not the policy of the law, nor conducive to good morals or good government, to allow the laws directed against one offense to become a shield against the punishment of another."

In People v. Kilpatrick, supra, referring to section 25 of the Volstead Act (27 USCA sec. 39), the court said: "The purpose of this act was to limit civil rights, not criminal liability; to prevent the use of the law as a weapon of offense by the lawbreaker, not to make one crime a shield for the protection of the perpetrator of another. To all demands for possession of contraband, or damages for its conversion, it returns its fiat. 'No property;' to the thief who seeks its shelter it says, 'No asylum.' "

In People v. Otis, 235 N. Y. 421, 139 N. E. 562, the defendant was indicted for the larceny of whisky unlawfully possessed, and in upholding the conviction the court said: "The statute (41 Stat. 315, tit: 2, sec. 25, 27 USCA sec. 39) further provides that 'no property rights shall exist' in liquor illegally possessed. There can be no larceny of property not subject to ownership. How then, it is asked, may there be larceny of such liquor? If we give the broadest possible construction to these words there is no answer; for it must be conceded that, to enforce the recent amendment to the Constitution, Congress may beclare that to steal liquor shall no longer be a crime. It might think it wise to license theft, so as to discourage intoxication. We should not, however, readily impute to it such a design."

In Hoback v. U. S., 284 F. 529, the United States Circuit Court of Appeals for the Fourth Circuit, in interpreting the same statute, said: "There is nothing in the point that contraband liquor cannot be the subject of larceny and embezzlement. The trend of authorities to the contrary is unbroken."

Other cases in which it is held that contraband liquor is the subject of larceny, notwithstanding the provisions of the Volstead Act and state statutes that no property rights shall exist therein, are State v. Beaman, 143 Wash. 281, 255 P. 91; People v. Wilson, 298 Ill. 257, 131 N. E. 609; Arner v. State, 19 Okl. Cr. 23, 197 P. 710; Lout v. State (Okl. Cr. App.) 244 P. 820; State v. Evans (Utah) 279 P. 950.

Under ground 3 it is argued that, no conspiracy having been charged in the indictment, it was error to submit the case under a conspiracy instruction. The court instructed the jury that it might find appellant guilty if it should believe he entered into a conspiracy with George Gagnon to rob Vittitoe of his whisky and Gagnon did rob him as a result of such conspiracy, and in pursuance thereof, and while the same existed.

A defendant is entitled to be advised of the charge against him, in order that he may prepare to meet it, and the question to be determined here is: Did the indictment inform appellant that he was accused of entering into a conspiracy with a codefendant to commit the crime of robbery, and that pursuant to such conspiracy the robbery was committed? The indictment charges appellant and Gagnon as principals, and the appellant must have known that where two persons are charged jointly with the commission of a crime, all of the elements of conspiracy are included. Before they could be jointly guilty of the crime, it must have been committed as the result of some concerted action growing out of an agreement between them. Conspiracy is only one of the means by which a crime may be committed and conspiracy as a punishable crime, which becomes merged in the executed crime if the latter is of greater degree than the conspiracy (Commonwealth v. Harper, 195 Ky. 843, 243 S. W. 1053; Commonwealth v. Barnett, 196 Ky. 736, 245 S. W. 874), must be distinguished from conspiracy merely as a means of consummating the crime, and which renders the participants therein principals in the executed crime. Where one is jointly charged as a principal with another, it is competent to show that the crime was executed by a codefendant pursuant to a conspiracy, in order to establish that the defendant was a principal.

In Dorsey v. Commonwealth, 17 S. W. 183, 13 Ky. Law Rep. 359, it was held that, where there is evidence tending to show a conspiracy, it is proper to instruct the jury as to it, although no conspiracy be charged in the indictment. In the course of the opinion it was said: "If two persons be jointly indicted for murder, but no conspiracy charged, yet, as under our law principal and abettor are equally guilty, and as the act of one is that of both, conspiracy to do the act may not only be shown, as showing the intent with which the person acted, but it is proper to instruct the jury as to it."

In Twyman v. Commonwealth, 33 S. W. 409, 17 Ky. Law Rep. 1038, the case was reversed on account of a number of errors appearing in the record, and in the opinion it was directed that on another trial the instruction with respect to a conspiracy should be omitted, since the indictment did not charge a conspiracy. In Taylor v. Commonwealth, 90 S. W. 581, 28 Ky. Law Rep. 819, Taylor and two others were indicted jointly for the crime of murder. There was no charge of conspiracy. The trial court gave an instruction which authorized the jury to find the defendant guilty, if the jury believed he conspired with another person or other persons to commit the crime, and that the crime was committed by such other person or persons in pursuance of such conspiracy. The Twyman case was cited, but the instruction was correctly held improper, since it did not confine the conspiracy to those named in the indictment, and there was neither allegation nor proof of a conspiracy with any other than Taylor's codefendants.

In Watts v. Commonwealth, 197 Ky. 101, 245 S. W. 884, the precise question was not before us, but in referring to the apparent conflict between Dorsey v. Commonwealth, supra, and the Twyman and Taylor cases, this court said: ''It is insisted that the giving of the part of the instruction complained of finds support in the case of Dorsey v. Commonwealth, 13 Ky. L. R. 359, 17 S. W. 183, where it was held proper in an indictment charging one of the defendants as principal, and the other as aider and abettor, to instruct on the subject of conspiracy, though no conspiracy was alleged in the indictment. We find, however, that in the more recent cases of Twyman v. Commonwealth, 33 S. W. 409, 17 K. L. R. 1038, and Taylor v. Commonwealth, 90 S. W. 581, 28 K. L. R. 819, a different view of the question was taken, and it was held error to instruct as to a criminal conspiracy when not charged in the indictment. Without attempting to reconcile these cases, or to decide which is the proper doctrine, it is sufficient to say that, when a defendant is jointly indicted with others for murder, it is not going far afield to prove that he and his codefendants agreed in advance to do the very thing charged in the indictment and to submit such agreement to the jury.''

In Yontz v. Commonwealth, 66 S. W. 383, 23 Ky. Law Rep. 1868, Yontz was jointly indicted with two others for the crime of murder. There was no express averment of conspiracy in the indictment, which charged

Yontz with the murder of the deceased, and also charged that he was present aiding and abetting the others in the commission of the crime. It was held that an instruction on conspiracy was authorized.

The precise question here involved has been considered in a number of cases by the Supreme Court of Georgia and by the Court of Appeals of that state. In Dixon v. State, 116 Ga. 186, 42 S. E. 357, the court said:

> "It is not, on the trial of one of two or more persons jointly indicted for a crime, inappropriate to charge upon the law of conspiracy merely because the indictment does not, in terms, allege that there was a conspiracy to commit the offense."

The rule announced in the Dixon case has been followed in McLeroy v. State, 125 Ga. 240, 54 S. E. 125; Bradley v. State, 128 Ga. 20, 57 S. E. 237; Lynn v. State, 140 Ga. 387, 79 S. E. 29; and Glasgow v. State, 34 Ga. App. 194, 129 S. E. 9. This rule has also been adopted in Colorado. Van Wyk v. People, 45 Colo. 1, 99 P. 1009.

In Day v. Commonwealth, 173 Ky. 269, 191 S. W. 105, Sarah Day and another were jointly indicted for the murder of the former's husband. In considering the competency of proof of statements made by her codefendant, but not in her presence, the court said: "Where two or more are jointly indicted for the commission of a crime, although there is no express averment of a conspiracy having been formed between them to commit the crime, the acts and declarations of each may be proven against the others, when a prima facie case of a conspiracy has been made out between them to commit the crime, if the declarations and acts are in furtherance of the common purpose, although not done nor said in the presence of each other, but the court should instruct the jury in regard to them."

In Powers v. Commonwealth, 197 Ky. 154, 246 S. W. 439, the defendant complained because no instruction on conspiracy was given although there was no conspiracy charged in the indictment. While it was held that failure to give the instruction was beneficial to appellant, and he could not complain, the rule announced in the Dorsey case was impliedly approved.

In Crenshaw v. Commonwealth, decided December 21, 1928, 227 Ky. 223, 12 S. W. (2d) 336, an instruction was approved which permitted the jury to consider certain evidence relative to the acts and conduct of codefend-

ants of appellant if it believed from all the evidence that a conspiracy existed, although the indictment contained no charge of a conspiracy. In disposing of the objection to this instruction, it was said: "It will be observed that defendants were neither indicted nor tried for entering into a conspiracy. They were only charged with murder, the language of which was in due form, and the essential element of it is 'malice aforethought.' The proof of a conspiracy is but a means of establishing such malice, which must be premeditated, and the conspiracy, if any, would be conclusive proof of such premeditation, and it was so held by us in the cases of Dorsey v. Commonwealth, 17 S. W. 183, 13 Ky. Law Rep. 359; Howard v. Commonwealth, 114 Ky. 372, 70 S. W. 1055; Day v. Commonwealth, 173 Ky. 276, 191 S. W. 105; Powers v. Commonwealth, 197 Ky. 160, 246 S. W. 436; and which was also, in effect, approved in the case of Watts v. Commonwealth, 197 Ky. 105, 245 S. W. 884."

A number of cases from foreign jurisdictions are cited in support of the rule announced in the opinion. Evidence of the existence of a conspiracy being competent, though the indictment does not charge a conspiracy, it necessarily follows that an instruction based on such evidence is proper.

Under ground 4 appellant insists that the trial judge erred in changing the verdict as rendered by the jury. The verdict as rendered by the jury reads as follows: "We, the jury, find the defendant, Merrimee Ray, guilty of conspiracy and sentence him to six years in the pen." The judge, in the presence of the jury, altered it so as to read: "We, the jury, find the defendant, Merrimee Ray, guilty as charged in the indictment, and fix his punishment at confinement in the penitentiary for six years." The verdict as altered was then read to the jury, and they were asked if that was what they meant, and they answered in the affirmative.

It is insisted that the trial judge did more than make clarifying corrections in the form of the verdict, and that the corrections altered the substance of the verdict. What we have said under ground 3 in effect disposes of ground 4 adversely to appellant's contention. The verdict as renedered by the jury found the appellant guilty, but unnecessarily recited how the crime had been committed as disclosed by the evidence; that is, by means of a conspiracy, which the jury necessarily found to exist in order to find appellant guilty. The alteration affected the form

of the verdict, but not its substance, and made it conform to the intention of the jury. Blair v. Commonwealth, 93 Ky. 493, 20 S. W. 434, 14 Ky. Law Rep. 495. The jury could not have intended to find appellant guilty of the crime of conspiracy, which had not been submitted to it, as distinguished from the crime of robbery committed pursuant to a conspiracy. It was clearly the intention of the jury to find appellant guilty under the instruction, which authorized conviction if the jury believed the robbery was committed as the result of a conspiracy and while the same existed.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.

The whole court sitting.

### On Petition for Rehearing.

### Per Curiam. Rehearing Denied.

### Dissenting Opinion by Judge Dietzman.

On the petition for a rehearing, Chief Justice Mc-Candless, Judge Logan, and myself are of the opinion that the petition should be sustained, and the judgment herein reversed, because of the lower court's action in giving the conspiracy instruction complained of. For that reason, although we concur in the original opinion, in so far as it holds that intoxicating liquor, although illegally possessed, is yet the subject of larceny, we must dissent from it in so far as it upholds the lower court's action in giving the conspiracy instruction.

The majority opinion sets out in full the indictment in this case. It also sets out fully the facts and evidence as developed on the trial. Perhaps I should add to its statement of the case the fact that the only instruction given on the trial, aside from the usual reasonable doubt instruction, was the conspiracy instruction in question. The trial court was evidently under the impression that the evidence wholly failed to show that the appellant actually committed the robbery, in which doubt he is upheld by the record, and further that the evidence wholly failed to show that the appellant was so near aiding, assisting, and abetting Gagnon, who the evidence shows did commit the robbery, as to be a joint principal with him, in which latter doubt it is questionable whether the record bears him out or not. At all events, the lower court gave no instruction on either of these theories of

the case, but instructed the jury solely, in substance, that if it believed beyond a reasonable doubt that the appellant and Gagnon entered into a conspiracy to commit this robbery, and pursuant to this conspiracy and while it was still existing Gagnon went forth to commit and did commit the robbery, then it could convict the appellant of the offense charged in the indictment. It will be noted that, under this instruction, appellant could have been convicted, although the jury may have believed his alibi, and that he was in Louisville, some 40 miles away from the scene of the robbery, at the time of its commission. Probably the jury did so believe, because its verdict, which the court changed, was that it found the appellant guilty, not of robbery, nor of aiding or abetting, but of conspiracy.

To my mind, the lower court was not justified in thus instructing, either by reason or precedent. The indictment in this case charges the appellant and Gagnon with the offense of robbery. It then tells how they committed this crime. Clearly and unambiguously, it states that Gagnon and others robbed Vittitoe, with the appellant aiding, assisting, and abetting, being then and there present, or so nearly so as in law and in fact to constitute him a joint principal. There is not a single allegation in this indictment from which appellant would know that he could be convicted of this offense, although he may have been 40 miles away at the time of its commission.

Subsection 2 of section 122 of the Criminal Code, which provides what an indictment must contain, reads: "A statement of the acts constituting the offense, in ordinary and concise language, and *in such a manner as to enable a person of common understanding to know what is intended,* and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." (Italics mine.)

This section of the Code requires a statement of the acts constituting the offense, not in technical language, or in words pregnant with legal conclusions from which an astute lawyer might deduce what the commonwealth is going to prove, but in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended. There is a reason for this requirement, and it is because the framers of the Code, in accordance with a basic rule of fair play, to

which even an undoubted offender is entitled, if mankind is to preserve its own self-respect, intended that the accused should know on what facts—not evidence of facts, but just upon what facts—the commonwealth relied to establish his guilt, to the end that he might prepare his defense accordingly. Thus in Commonwealth v. Jarboe, 89 Ky. 143, 12 S. W. 138, 11 Ky. Law Rep. 344, we said: "The material averments of an indictment must be proven substantially as charged; but the reason for this is that the accused may have notice and opportunity to prepare his defense."

I will not multiply authority on so elementary a proposition. Now the indictment here in question, fairly construed as a whole, charges appellant with the commission of this crime by aiding and abetting Gagnon, being then and there present, or so nearly so as to constitute him a joint principal. What would a person of common understanding conclude from this language in the indictment? I challenge my Brethren of the majority to read this indictment to the first 100 men they meet. I am confident the overwhelming majority of such men would be astonished, if they were told that this indictment also charged appellant with a conspiracy, and that on his trial he could be convicted, although he was 40 miles away from the scene of the crime. It would never occur to them that the appellant would have to be prepared to defend himself, beyond showing that he was not present at the scene of the crime, nor so nearly so, aiding, assisting, and abetting, as in fact to make him a joint principal with Gagnon. Surely criminal pleadings should receive no more liberal interpretation than civil pleadings; and with the latter it is settled that the pleader is confined to that which he charges. To illustrate: It is settled that in negligence cases, if the plaintiff pleads general as well as specific acts of negligence, he is bound by the specific acts he pleads, and, if he fails to establish them on the trial, he may not recover by relying on his plea of general negligence. It was so held in two recent opinions of this court, that of L. & N. v. Morgan's Adm'r, 225 Ky. 447, 9 S. W. (2d) 212, and that of I. C. R. R. v. Cash's Adm'x, 221 Ky. 655, 299 S. W. 590.

In the case before us, the commonwealth specified in what manner the appellant was charged with the commission of this offense. It should be held to the manner charged. We would unhesitatingly so hold in a civil case. Why should the rule be different in a criminal

case? The committee of the American Law Institute in charge of restating the law of criminal procedure proposes that an indictment shall simply charge the accused with the offense, and that it shall devolve on the commonwealth's attorney to file a bill of particulars, setting out the manner in which the offense is claimed to have been committed. Suppose that such had been the procedure here: Ought any court, after the commonwealth's attorney had stated that he proposed to prove appellant's guilt by showing that he was present, or so nearly so, aiding and abetting, as to constitute him in fact a joint principal, permit him to abandon that case over appellant's objection, and establish the latter's guilt by proving a conspiracy? To me the answer is plain. But my Brethren say that, if two men are charged jointly with the commission of an offense, it is not too much to say that they ought to anticipate they will be charged with a conspiracy. The answer to that in this case is that, if the commonwealth had alleged the commission of this crime generally, as it might have done, there might be some substance in that position of the court. But the commonwealth did not do so, but specified particularly how the crime was committed, and to me it is going very far afield to prove that it was committed in an entirely different fashion.

Further, another answer to the court's position is that there can be a commission of an offense by two or more persons without a conspiracy between them. A conspiracy is essentially an agreement. A may on very short notice and without any previous agreement with B get into a fight with X, and B may without any previous agreement with A aid and abet A in killing X in this fight, and B may under such circumstances be a joint principal with A, without any conspiracy existing between them. So that a charge as in the instant indictment does not necessarily incorporate within itself a charge of conspiracy, and the manner in which the commonwealth particularized its commission excludes the manner in which the commonwealth relied for a conviction in this case. I believe, then, that on reason the lower court erred in giving the conspiracy instruction.

Am I bound to the contrary by precedent? The only authority to sustain the majority opinion from this jurisdiction is that cited in the majority opinion, except the case of Gilbert v. Commonwealth, 228 Ky. 19, 14 S. W. (2d) 194, decided after the original opinion in this case

was handed down, and while it was pending on rehearing, and which relies on that opinion as its basis. I shall for the time being lay to one side the cases illustrated by Day v. Commonwealth, 173 Ky. 269, 191 S. W. 105, and Crenshaw v. Commonwealth, 227 Ky. 223, 12 S. W. (2d) 336, 346, which hold that, in proving an accused guilty of the offense charged in the indictment, the commonwealth may introduce statements made by others not in his presence, providing it first establishes prima facie a conspiracy between the accused and such others to commit the offense, and shall confine myself to the cases cited, involving the actual question here discussed.

The first case, historically, is that of Dorsey v. Commonwealth, 17 S. W. 183, 13 Ky. Law Rep. 359, which, although, if my majority Brethren be correct, it established a very new principle not theretofore decided, was not deemed of sufficient importance to be officially reported. The facts in that case, as I read the record, are fully set out in the opinion, and the instruction upon which my majority Brethren pin their faith is set out at length therein. It will be noted that the instruction required the jury to believe *that Dorsey was present, aiding and abetting Jackson, at the time the latter shot and killed Burnett.* It did not permit the jury to find Dorsey guilty solely on the ground that he and Jackson had conspired to kill Burnett, and that pursuant to that conspiracy, and while it was yet existing, Jackson had gone forth and killed Burnett. *The only part the conspiracy played in this Dorsey case was to establish the intent on the part of Dorsey* and Jackson, and the instruction allowed the jury to deduce from the conspiracy, not the guilt of Dorsey of the offense, but only the intent of his act. The Dorsey case belongs to the line of cases illustrated by the Crenshaw case, and does not support the trial judge in his action in this case. The very excerpt quoted in the majority opinion shows that the Dorsey case was confined to this question of establishing the intent. I pass it by without further comment.

The next case was Twyman v. Commonwealth, 33 S. W. 409, 17 Ky. Law Rep. 1038, which is passed over by my majority Brethren without much comment. That case is a square holding that a conspiracy instruction where no conspiracy is charged in the indictment, is error. True it is, the case was reversed for other errors, but the court specifically stated that the conspiracy instruction was to be omitted on the next trial. It is no

surprise that the Dorsey case was not mentioned in that opinion, since, as we have seen, the Dorsey case was not in point, and in no way conflicted with the Twyman case. In the Dorsey case, conspiracy was allowed to be considered only for the purpose of establishing intent. In the Twyman case, it was allowed by the trial court to be considered for the purpose of establishing guilt of the offense charged. The affirmance of the Dorsey case and the reversal of the Twyman case were entirely consistent.

The next case is Yontz v. Commonwealth, 66 S. W. 383, 384, 23 Ky. Law Rep. 1868, and an examination of the record discloses that it supports the majority opinion. The correctness of the conspiracy instruction is upheld in just these two sentences in the opinion: First, "We are unable to see the force of this contention;" (that is, a conspiracy instruction should not have been given because no conspiracy was charged in the indictment); secondly, "the averments of the indictment and the proof in the case were both sufficient to authorize the instruction complained of." In the absence of an elaboration of its reasons, which induced it to reach these conclusions, I am unable to follow the court in its decision.

The next case is Taylor v. Commonwealth, 90 S. W. 581, 583, 28 Ky. Law Rep. 819. My majority Brethren say that this case was reversed because the conspiracy instruction was not limited to a conspiracy between the accused and those named with him in the indictment. I do not so read the opinion. It says: "That it was error to instruct as to criminal conspiracy, when not charged in the indictment, was expressly decided in Twyman v. Commonwealth, 33 S. W. 409, 17 Ky. Law Rep. 1038. . . . *The court should have omitted the instruction as to conspiracy,* and limited that as to aiding and abetting appellant's codefendants in the indictment." (Italics mine.)

I might add, also, that even under the instruction as given, and even if further limited to Taylor's codefendants, it required the jury to believe that *Taylor was present, aiding and abetting his codefendants in the killing of Moore,* before the jury could find him guilty. If Taylor had to be present, aiding and abetting, it is hard to understand what part the conspiracy played, unless, as in the Dorsey case, to establish intent, since Taylor under such circumstances would have been guilty, independent of a conspiracy.

I agree with the majority opinion that the case of Powers v. Commonwealth, 197 Ky. 154, 246 S. W. 436, is not in point, so that the last case we have to consider is that of Watts v. Commonwealth, 197 Ky. 101, 245 S. W. 884, 885. There the indictment charged a conspiracy to murder Maggie Allen, and the instruction warranted a conviction, if there was a conspiracy to effect a jail delivery in the course of the execution of which Maggie Allen was killed. The case was reversed because one conspiracy was alleged and another proved. In the course of the opinion, the court, without analyzing the Dorsey or other cases, as it expressly stated, indulged in the obiter dictum quoted in the majority opinion, which I find hard to reconcile with this excerpt, culled from the earlier part of that opinion:

"The object of the indictment is to inform the defendant of the offense with which he is charged, and to that end the Criminal Code requires that 'the indictment must contain . . . a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended' (section 122, Criminal Code) and that 'the indictment must be direct and certain as regards . . . the particular circumstances of the offense charged, if they be necessary to constitute a complete offense' (section 124, Criminal Code). The requirement that the acts constituting the offense be given, or that the particular circumstances of the offense be stated with certainty, would be of little value to the defendant if the commonwealth could prove and have submitted to the jury acts and circumstances altogether different from those alleged. . . . There is no analogy between this case and cases of a slight variance between the instrument alleged and that proved. . . . However, the rule is confined to cases where the nature and character of the injury, and the manner and means of inflicting it, as proved, are practically and substantially, though not identically, the same as those alleged, and it is well settled that an indictment charging the killing in one manner will not support a conviction of killing in a different manner."

So, in the instant case, appellant had no idea that, when he was charged with being present, aiding and abet-

ting, he could be convicted, when he was 40 miles away, because of a conspiracy not set out in the indictment. But, at all events, the Watts case is authority neither for my majority Brethren nor for me.

To sum up, then, the Dorsey case is not in point, and was not cited in any subsequent case in which this question was directly presented, and properly not cited, since it did not involve that question. The Yontz case is against me, but without any reasoning expressed that I can discuss. The Twyman and Taylor cases are with me, but are open, I admit, to the same objection of absence of reasoning as I make to the Yontz case. With but a slender majority in my favor of one case out of three, none of which are much reasoned out, I am willing to submit the issue on reason, and, as I think I have pointed out in the earlier part of this opinion, reason dictates the conclusion that the lower court erred in the conspiracy instruction.

I am not unmindful of the Day, Crenshaw, and like cases, which I stated I would take up after my discussion of the line of cases headed by the Dorsey case. To repeat, the Day, Crenshaw, and like cases hold that, when prima facie proof of a conspiracy has been introduced, then statements, etc., of one of the alleged conspirators may be introduced in evidence against the accused, to establish his guilt of the crime charged in the indictment. As said in the Crenshaw case: "To apply it (that is, the stated principle) as a rule of practice cannot in slightest degree prejudice the right of defendant, since, as we have pointed out, the testimony is *but a method of proving the necessary element to establish the required malice for the commission of the charged offense.*" (Italics mine).

Or, to express it more broadly, it is but a method of proof to show that the defendant committed the offense charged in the indictment, and *as charged in the indictment.* The accused has never been entitled as a matter of absolute right to know how the commonwealth was going to prove the case it had charged. It is no answer to the production of an eyewitness for the accused to say that he did not know there was an eyewitness, and the commonwealth did not tell him that it had an eyewitness. He must expect the commonwealth to prove its case by any competent evidence. Evidence of conspirators of the kind mentioned is always admissible against the accused. Indeed, the principle is not confined to crim-

inal cases. Thus in Jones on Evidence, sec. 254, we find, where several jointly attempt to accomplish "a *fraud,* the declarations of one of them, made during the progress and in the prosecution of the joint undertaking, or accompanying and explaining acts done in furtherance of it, are evidence against the others. Thus, in an action by a woman for indecent assault, the defendant may introduce evidence of statements by the plaintiff's husband, tending to show that the action was brought to carry out a scheme contrived by them for extorting money."

. The doctrine of the Crenshaw and like cases rests on principles of evidence, and not of criminal procedure. The accused, under the principles of criminal procedure of the Code and of fair play, has a right to assume that the crime and manner of its commission is as stated in the indictment, and that he will not be called upon to defend against anything else. To me the distinction between the two lines of cases is clear and plain.

I am advised that the only other jurisdiction which follows the rule adopted by the majority opinion is that of Georgia. I believe the rule to be unsound in principle and unsupported by controlling authority. For that reason, I must dissent from the majority opinion, in so far as it holds the conspiracy instruction in this case was not erroneous.

I am authorized to state that Chief Justice Mc-CANDLESS and Judge LOGAN concur in these views and this dissent.