## Rhea et al. v. Commonwealth.

(Decided December 16, 1930.)

SMITH & McKENZIE for appellants.

J. W. CAMMACK, Attorney General, and DOUGLAS VEST for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Reversing.

The appellants, E. C. Rhea and N. T. Bates, seek the reversal of a judgment convicting them of converting the money of another to their own use, a crime denounced by section 1358a of the Kentucky Statutes. Each of them was sentenced to serve one year in the penitentiary. The judgment will be reversed on the ground that the trial court should have peremptorily instructed the jury to find the defendants not guilty.

When the crime is charged to have been committed, in February, 1929, the appellant Bates was the district agent or manager for the American Life & Accident Insurance Company, an industrial company, and Rhea was a local agent working under him at Hopkinsville. A colored woman named Eliza House was the beneficiary in two policies of insurance, one for $75 and the other for $390, which had been written on the life of Sue Cunningham, deceased. A check for $465, payable to Eliza House, was issued by the home office in Louisville and sent to Bates for delivery to her. She testified that Bates, accompanied by Rhea, came to her home in Trigg county and said that they could not pay her the full amount of the larger policy because the insured, Sue Cunningham, had had tuberculosis; that they gave her a check for $270 and credited her with $35 for advanced payment of premiums on other policies which she carried in the company on her husband and children; that she signed a receipt, which was for $465, but she did not read it. She denied ever having seen the $465 check; yet it was produced in evidence and unquestionably bore her indorsement. It was further shown by the exhibition of her premium books and the testimony of the claim manager of the company that she had been given credit for $85 on her premiums. The check for $270 which she said she received was drawn by a Miss Miles, local cashier, on the account of the company carried in a Hopkinsville bank. The difference of $110 between these two sums and $465, which Eliza House testified she never received, was the money which the defendants are charged to have converted to their own use. The assistant cashier of the bank in Hopkinsville testified that this check of $465 was credited to the account of the American Life & Accident Insurance Company. This account could be drawn upon only by the cashier, who was bonded, for the payment of salaries and expenses of the Hopkinsville office and of claims against the company, excepting death claims; the net balance being remitted to the home office.

A representative of the insurance department of Kentucky made an investigation of this matter and interviewed the defendants. She testified that they denied any wrongdoing, but said that possibly they owed Eliza House some money, which they would pay her upon her return from Detroit. They said it was ridiculous to charge them with having received this money, but they declined to tell the representative about the matter, and,

when threatened with grand jury action, stated they would be glad to relate all facts to that body. This admission by the defendants and the testimony of Eliza House that she had in fact been paid and had accepted only $355 instead of $465, for which she had given a receipt, constituted all the evidence introduced by the commonwealth. She was not an ignorant woman, for she had taught school seven or eight years.

The defendants say that they received the $465 check on Saturday night, and on Sunday took it to Eliza House and there delivered it to her and obtained her receipt therefor. They showed her the advantage to be gained by paying in advance the premiums on her other policies, and with her agreement they credited her with $85. The company encouraged them and its other agents to pursue this practice when they could. They had learned from experience that beneficiaries of these policies usually wanted cash instead of a check, and on this occasion they took with them their cash collections of Saturday, amounting to $110, and a check signed by the local cashier with the amount left blank, which was to be given the beneficiary for whatever amount was necessary to make up the full sum of $465. They paid her the $110 in money, filled out the check for $270, and delivered it to her and credited her account with $85, took her receipt in full and the $465 check indorsed by her. This was duly placed to the credit of the company's bank account. They deny having told the representative of the insurance department that they owed Eliza House some money on a settlement, but say she misunderstood them as they told her that she (Eliza House) possibly thought they did. This statement is consistent with the latter's testimony that they had made an agreed settlement with her for less than the face value of the policy.

Of course, the evidence of the defendants exonerated them of guilt; but, taking the evidence of the commonwealth's witnesses, two things clearly appear: (1) That the entire transaction was had in Trigg county and not in Christian county, where the defendants were tried and convicted; and (2) that, if Eliza House received only $355 instead of $465 as she stated, the difference went into the Hopkinsville bank account of the insurance company, whose agents the defendants were. In fact, according to her evidence, it was never delivered to her and at all times remained in possession of the company. The defendants could not therefore have been guilty of con-

verting the money of Eliza House to their own use, the charge in the indictment, for it never became her property. The defendant Bates simply settled her claim for $465 by paying and crediting her with $355, which she accepted. This is further manifested by the evidence of the company's claim manager that there had been correspondence and conversations with Bates regarding the subject of the deceased having had tuberculosis, and as to her right to collect proceeds of the $75 policy, which named the children of Sue Cunningham as beneficiaries. No audit of either the local bank account or the account of Bates and Rhea, as agents, was introduced contradicting this proof that the money went back to the company.

It is not unusual, as the records coming to this court show, for these industrial insurance policies to be settled for less than their face value, sometimes without a valid reason. If this one was settled that way, as the testimony of the House woman indicates, the difference was not converted to the use of either of these defendants individually, but, as has been suggested, went into the coffers of the insurance company, and for aught that appears in this record is there today.

The indictment charges them with converting the money to their own use, although there are allegations in the descriptive portion that it was converted to their own use or to the use of another. This latter statement must be regarded as surplusage. Commonwealth v. Holliday, 166 Ky. 381, 179 S. W. 235; Ray v. Commonwealth, 230 Ky. 656, 20 S. W. (2d) 484, 66 A. L. R. 1297. The indictment is subject to other criticism, both in form and substance (see Roberson's Cr. Law, secs. 931, 934), but, in view of the conclusion reached, it is not necessary to pass on its sufficiency.

There was no evidence showing that either of the defendants is guilty of the crime charged. Indeed, the only evidence against Rhea was that he had accompanied Bates into Trigg county when he had the transaction with Eliza House, and this manifestly could not have made him guilty of anything which Bates might have done. Both were entitled, under the evidence, to a directed verdict of acquittal.

The judgment is therefore reversed.